Edward J. BECKSTEAD, Vesta N. Beckstead, Steven G. Stagg and Pauline B. Stagg, his wife, Plaintiffs and Respondents,

v.

Frances B. GLABE, Defendant and Appellant.

No. 16733.

Supreme Court of Utah.

July 15, 1981.

summons. [Footnotes omitted.] [253 Or. at 422–23; 453 P.2d at 661.]

Ralph J. Marsh, Salt Lake City, for defendant and appellant.

Paul N. Cotro-Manes, Salt Lake City, for plaintiffs and respondents.

HOWE, Justice:

This is an appeal from a judgment granting the plaintiffs rescission of a Uniform Real Estate Contract because of the breach thereof by the defendant. The plaintiffs will hereafter be referred to as the buyers and the defendant as the seller.

On May 31, 1978, the parties entered into the contract of sale covering 320 acres of unimproved land in Cedar Valley, Utah County. The total sales price was $147,200 with $15,000 paid down and the balance of $132,200 to be paid as follows: $5,000 on August 1, 1978; $5,000 on November 1, 1978; $3,166.41 on December 1, 1978, and a like amount on the first day of each and every month thereafter until the entire principal balance with interest had been paid.

The printed form of contract which the parties used provided that the seller would retain title to all the property during the life of the contract as security for the payment of the balance and only when it had been paid in full would the property be conveyed to the buyers. At the time the parties met to close the sale, the plaintiffs refused to execute the contract unless a provision was inserted requiring the seller to convey portions of the property as payments were made. The defendant agreed but insisted that any such conveyances be conditioned on receipt of payment therefor. Thus the closing agent inserted into the contract the following provision:

> Upon seller receiving sufficient sums of money to pay for 60 acres of land, seller agrees to convey by warranty deed sixty acres on January 1, 1979. Upon seller receiving sufficient sums of money to pay for forty additional acres of land each successive year, seller agrees to convey forty acres each January, beginning January 1, 1980, and each January thereafter until Contract is paid in full and the remaining acreage is deeded to Buyers.

The buyers did not make the August 1, November 1, or December 1, 1978, payments on time but made them during the 30-day grace period provided for in the contract. This delay was upsetting to the seller since she relied upon prompt payment in order that she could make a payment on a contract on the purchase of her home. During the middle of December 1978 as she anticipated the January 1st payment becoming due, she had a conversation with Mr. Beckstead, one of the buyers, at which time she made an offer to the buyers that if they would make the January 1st payment on time she would then give them a deed to sixty acres of the property. She confirmed this offer in a letter written later in December, and she prepared and executed a warranty deed dated December 28, 1978, which was complete in all particulars except the sixty acres to be conveyed were not described in the deed. The parties had never discussed which sixty acres would be first released and conveyed.

The buyers did not make a timely acceptance of her offer. Instead they waited again until nearly the end of the 30-day grace period and on January 29, 1979, when she came to their home, they tendered her a check for the January payment, but demanded from her the deed for sixty acres. She refused on the ground that the payment was not timely. They refused to give her the check.

Thereafter the seller's attorney made written demand upon the buyers for the January payment, and in accordance with the provisions of the contract notified them that if said sum was not paid within five days after service of the notice the contract would be forfeited and cancelled and all payments made thereunder would be forfeited to the seller as liquidated damages for non-performance of the contract. The buyers failed to make payment and brought this action seeking specific performance, or in the alternative, rescission of the contract. The seller counterclaimed seeking a decree releasing her from all obligation to convey the property to the buyers and determining that all payments made pursuant to the contract should be forfeited to her as liquidated damages for non-performance. The court below granted the buyers rescission and awarded them judgment for $28,166.41, which was the total sums paid by them under the contract, together with interest thereon.

The buyers do not claim that they timely accepted the seller's offer, but assert that she was obligated under the very terms of the contract to convey sixty acres when the January payment was made, including any payment made during the grace period. The problem with that contention is that it entirely disregards the specific language of the provision which the parties inserted in the contract at the time of closing. That language was "upon seller receiving sufficient sums of money to pay for sixty acres of land, seller agrees to convey by warranty deed sixty acres on January 1, 1979." The seller testified that in December 1978 she went over her figures with Mr. Beckstead and told him that he was "far" from having paid for the sixty acres but that she would convey them to him anyway as an incentive to get him to make the January 1st payment on that date. She testified that she had two or three discussions with the sellers or some of them concerning this matter. The buyers do not deny such conversations took place, but Mr. Beckstead testified that he interpreted the contract to mean that the seller was obligated to convey the sixty acres at the time the January payment was made. He did not claim, however, that he had ever expressed that interpretation to the seller or to anyone. It was simply a mental impression that he had carried since the contract was signed.[1]

Neither party contends that any acre had a greater or smaller value than any other acre. Indeed, two preliminary agreements signed by both parties contain computations showing that they used a straight $460 per acre in arriving at the sales price. Therefore, buyers would not have paid for sixty acres until they had paid in principal $27,600, which is sixty times the contract price of $460 per acre. Giving the buyers the most favorable interpretation of the language of the contract which is to apply everything they had paid in principal towards the payment of the sixty acres, they were short of the required $27,600. They had paid $28,166.41 on the contract, but $6,879.74 had been applied to interest (with which the buyers do not quarrel) and the remaining $21,286.67 had been applied to principal. Even if the principal portion of the January installment which would be $1927.71 were to be included, the total principal paid would then only be $23,214.38, still short of the required $27,600. Unless we are to completely ignore the words "sufficient sums of money to pay for sixty acres," there is no way that the buyers were entitled to a deed in exchange for the January payment. The contract allowed the buyers to make additional payments at any time and in order to have qualified for the conveyance of the sixty acres in January, the plaintiff should have made additional payments to bring the total amount of principal paid up to $27,600. To require the seller to convey sixty acres before she had been fully paid for them, would be to ignore the wording of the contract and to strip her

1. Because the interpretation of a written contract is usually a matter of law for the court to determine, *Overson v. USF&G Co.*, Utah, 587 P.2d 149 (1978), the testimony of the parties at the trial as to what they each thought the provision meant was of questionable admissibility.

of part of her security. We cannot presume such was the intention of the parties when they entered into the contract, especially when it is undisputed that the words "upon seller receiving sufficient sums of money" were included at seller's insistence.

The buyers point out the failure of the seller on January 29th, and her attorney subsequently, to explain to the buyers that her refusal to deliver the deed was based on the insufficiency in the amount of their payments. The reason she gave for her refusal was the untimeliness of the tender of the January payment on January 29th. She and her attorney had no reason to go further with any explanation since she testified that when she made the offer to the plaintiffs in December she "stipulated very plainly" that she would give a deed only if the January payment was made on January 1st. As mentioned above, she also testified that in December she told them that they were "far" from having paid for sixty acres according to her calculations. The buyers did not attempt to refute any of her testimony in this regard and do not claim that she misled them. Following the refusal of the buyers to make the January payment without receiving a deed to the sixty acres, eleven days passed before the seller on Feb-

ruary 9th declared the buyers' interest in the contract forfeited. Certainly during that period of time buyers had ample opportunity to have reflected upon their position, and to have obtained legal advice as to their obligation under the contract as they deemed it necessary.

The judgment below is reversed and the case is remanded with instructions to enter judgment in favor of the seller on her counterclaim and to determine how much, if any, of the payments should be returned to the buyers, and also to fix a reasonable attorney's fee for the seller, both below and on this appeal. Costs are awarded to the seller.

HALL, C. J., and STEWART and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.