494 P.2d 529

**STATE AUTOMOBILE and CASUALTY UNDERWRITERS, a Utah corporation, Plaintiff and Respondent,**

v.

**Richard J. SALISBURY and Diversified Insurance Agency, a Utah corporation, Defendant and Appellant.**

No. 12511.

Supreme Court of Utah.

Feb. 25, 1972.

Raymond M. Berry, Worsley, Snow & Christensen, Salt Lake City, for defendant and appellant.

Jay E. Jensen, Christensen & Jensen, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

State Automobile and Casualty Underwriters (hereafter State Auto) brought this action against Richard J. Salisbury and Diversified Insurance Agency (hereafter Diversified), agent of State Auto to recoup $19,758.74 plaintiff had paid out under a policy which it claims was improperly issued by Diversified. On the basis of a jury's answer to a special verdict indicating that Diversified had not properly performed its duties to the plaintiff, judgment was entered for the plaintiff. Defendants appeal.

On July 10, 1964, State Auto and Diversified entered into a written contract by which Diversified, who already represented other companies, was authorized to issue insurance policies on behalf of State Auto. One of Diversified's clients was Mr. Farrell Crawforth, who was insured by Diversified through another company. Desiring to change insuring companies on him, on October 1, 1965 Diversified (Mr. Salisbury) sent a binding application of insurance for Crawforth to State Auto's regional office in Denver. On that application were listed three moving traffic citations issued to Crawforth within the preceding two years. The application was received by State Auto's Denver branch office on October 4, 1965. On October 15, 1965 State Auto mailed the application back to Diversified, rejecting the application because of the traffic violations. Before the rejection was received by Diversified, Crawforth was involved in an accident, on October 16. Because Diversified had issued the binder,

State Auto honored claims against Crawforth for the $19,758.74 it seeks to recover herein.

The pertinent portions of the contract between the parties are:

. . . the Second Party [Diversified] shall not bind or obligate the State Automobile and Casualty Underwriters in any manner whatsoever except as herein specifically provided, or, as defined in the manuals and underwriting guide(s).

\*  \*  \*  \*  \*  \*

The Second Party may bind coverage on risks usually written and authorized by First Party [State Auto] with the following exceptions and limitations:

\*  \*  \*  \*  \*  \*

5. *The Second Party shall not have binding authority as respects any risk prohibited by the underwriting guide(s)* or the rate manual, *or included within the prohibited list thereof.*

\*  \*  \*  \*  \*  \*

8. Any changes or additions to the binding authority as herein provided shall be governed by the specific underwriting guides and/or manuals furnished by the First Party.

9. The Second Party shall under no circumstances have authority to bind any risks for a period of longer than twenty (20) days from the time such application is taken by Second Party, except on written consent by the First Party.

\*  \*  \*  \*  \*  \*

This contract is complete within itself and is the entire agreement between the Parties hereto . . . . [Emphasis added.]

Plaintiff State Auto had issued a 1964 "Prohibited List" which stated that persons who had two or more moving violations within the preceding three years were ineligible for insurance with State Auto. There is dispute between the parties as to whether Diversified received it. Plaintiff's evidence was that it was mailed to Diversified, while the latter denied receiving it. On the point in controversy plaintiff State Auto introduced correspondence concerning other applications, which indicated that it was State Auto's policy not to cover persons with two or more moving violations within the preceding three years and that such persons would be on the prohibited list. For example, just prior to the Crawforth application, a letter from State Auto dated September 13, 1965, which Diversified did receive, contained the following: "the applicant has had two violations in the last two years. This would also put the risk on our prohibited list."

The trial court submitted to the jury three special interrogatories. The first two related to whether plaintiff had proved by a preponderance of the evidence

that defendant Diversified had received the "1964 Prohibited List" or the underwriting guides. As to those two interrogatories, the jury answered favorable to the defendants, that the plaintiff had not so proved. However, the matter of controlling importance is the third interrogatory which stated:

Prior to October 1, 1965, in the exercise of reasonable care the defendant had enough notice to require the defendant to inquire about the prohibition of insuring applicants with two moving violations within three years.

The jury found that statement to be true, and based thereon, the trial court granted the judgment against Diversified. Defendants contend that the answers indicating that they did not receive the "1964 Prohibited List" entitles them to judgment; that the third interrogatory just quoted was improperly submitted, and that the answer was inconsistent with the answers to the other two interrogatories. We do not disagree with the trial court in rejecting those contentions.

It is true that the rights and duties of principal and agent inter se are primarily fixed by the contract between them. But also to be considered in connection therewith are the mutual responsibilities the parties have to each other which are implied from the operation of law applicable to such relationship. Arising from what is commonly known and accepted as to the customs and experience in the everyday affairs of life, the parties each has the right to assume that the other will perform the duties he agrees to with reasonable care, competence, diligence and good faith, even though such terms are not expressly spelled out in the contract;[1] and if failure to so perform those duties results in damage to the other party he is entitled to recover for breach of the contractual duties.[2]

The principle of law just stated is to be applied to the situation at hand, and

---

1. See: Rianda v. San Benito Title Guarantee Co., 35 Cal.2d 170, 217 P.2d 25: It is the duty of an agent to obey the instructions of his principal and exercise in his employment reasonable skill and ordinary diligence . . . ; and 3 Am.Jur. 2d, Agency, Sec. 202. The text states: An agent owes to his principal the use of such skill as may be required to accomplish the object of his employment, and if he omits to exercise reasonable care, diligence, and judgment, as the result of which failure his principal is damaged, he may be held responsible for such damage.

2. United States Liability Insurance Company v. Haidinger-Hayes, Inc., 1 Cal.3d 586, 83 Cal.Rptr. 418, 463 P.2d 770 (Cal. 1970): If an insurance agent negligently induces an insurer to assume coverage on which it suffers a loss the agent is liable. (citation omitted) Liability is not incurred by a mere error of judgment in the exercise of discretion unless the error is based on want of care or diligence (citation omitted).

in conjunction with the traditional rule of reviewing the evidence in the light favorable to the finding of the jury and the judgment entered thereon by the court. In doing so the finding that Diversified did not actually receive the "1964 Prohibited List" is to be accepted. But beyond this there is also to be accepted the finding that Diversified "had enough notice to require . . . [it] . . . to inquire about the prohibition of insuring applicants with two moving violations within three years." This obviously included Farrell Crawforth whose application listed three moving violations within the preceding two years and was thus not eligible for coverage under the plaintiff State Auto's stated policy of issuing insurance, of which fact defendant was or should have been aware.

Another comment is in order concerning Section 9 of the contract set forth above. It says that Diversified shall "under no circumstances have authority to bind any risks for a period of longer than 20 days . . . except on written consent of first party [State Auto]." It was apparently because of this provision that State Auto honored the Crawforth insurance and paid the claim which is the basis of this suit. Although it is shown in the evidence that State Auto at special request on occasions would accept risks which did not conform within their stated policy, it is also clear from the evidence that it would do so only upon request from Diversified and express approval thereof by State Auto, which approval was not granted on the Crawforth policy.

Upon the basis of what has been said in this decision it is our opinion that the judgment of the trial court should be sustained because: there is a reasonable basis in the evidence for concluding that the defendant Diversified had a duty to its principal State Auto, which it did not discharge; and that by reason thereof, the State Auto was damaged to the extent of the $19,758.74, which in justice the defendant should be required to pay.

Affirmed. Costs to plaintiff, (respondent).

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.