David S. GROW, Plaintiff and Appellant,

v.

MARWICK DEVELOPMENT, INC., a corporation; Daniel R. Southwick; Sterling Martell, et al., Defendants and Respondents,

and

Boardwalk Development Corporation, Defendant, Intervenor and Respondent.

No. 16675.

Supreme Court of Utah.

Dec. 10, 1980.

---

**2.** *United States v. District Court*, 121 Utah 1, 238 P.2d 1132 (1951); *State v. Johnson*, 100 Utah 316, 114 P.2d 1034 (1941).

**3.** *State v. Johnson, supra*, n.2.

Keith C. Rooker and Neal B. Christensen of Martineau, Rooker, Larsen & Kimball, Salt Lake City, for plaintiff and appellant.

Ronald R. Stanger, Provo, for defendants and respondents.

David R. Olson, Stewart M. Hanson, Jr., Suitter, Axland & Armstrong, Salt Lake City, for Boardwalk Development Corp. and Phoenix Development.

WILKINSON, District Judge:

Appellant appeals from a summary judgment which declared that the respondents had not forfeited their interest under a uniform real estate contract.

The basic facts which are applicable in this case and do not appear to be in dispute are as follows:

1. That on the 18th day of October, 1977, the appellant David S. Grow as seller and respondents Marwick Development, Inc., a corporation; Daniel R. Southwick and Sterling Martell jointly and severally as buyers entered into a uniform real estate contract for the purchase of certain real property located in Utah County, State of Utah. Paragraph 3 of the contract provides, in part:

> $205,000 plus accrued interest shall be payable in monthly installments of $1,747.44 until balance is paid in full. Said payments are to commence on December 1, 1977, and each subsequent month to be due and payable on the first day of each month.

Paragraph 11 provides, in part:

> On or before November 15, 1977, buyer shall pay one-third of 1977 taxes and seller shall pay the balance of 1977 taxes and all of the 1976 taxes then due.

Paragraph 11B provides:

> At any time and for whatever length of time this contract may be delinquent or in default by buyer for any reason the interest rate on all amounts unpaid under this contract shall increase to 18% per annum.

Paragraph 16 provides, in part:

> In the event of a failure to comply with the terms hereof by the Buyer, or upon failure of the Buyer to make any payment or payments when the same shall become due, or within fifteen days thereafter, the Seller, at his option shall have the following alternative remedies:
>
> A. Seller shall have the right, upon failure of the Buyer to remedy the default within fifteen days after written notice, to be released from all obligations in law and in equity to convey said property, and all payments which have been made theretofore on his contract by the Buyer, shall be forfeited to the Seller as liquidated damages for the non-performance of the contract, and the Buyer agrees that the Seller may at his option re-enter and take possession of said premises without legal processes as in its first and former estate, together with all improvements and additions made by the Buyer thereon, and the said additions and improvements shall remain with the land and become the property of the Seller, the Buyer becoming at once a tenant at will of the Seller.

2. Respondents failed to pay one-third of the 1977 taxes.

3. Respondents failed to make the May 1, 1978, payment.

4. On the 15th day of May, 1978, the appellant caused a notice of default to be mailed to the first named party, being Marwick Development, Inc.

5. Respondents failed to make the June 1, 1978, payment.

6. On the 6th day of June, 1978, a second notice of default was sent by certified mail to Marwick Development, Inc.

7. Respondents failed to make the July 1, 1978, payment.

8. Notice of failure to remedy default and notice of forfeiture was sent by certified mail to Marwick Development, Inc., on July 14, 1978.

9. Complaint was filed by appellant on July 20, 1978, but was not served on respondents until September 1, 1978, together with an amended complaint.

10. Respondents failed to make the August 1, 1978, payment.

11. On the 9th day of August, 1980, a third notice of default was sent by certified mail (the record does not show who the notice was sent to) giving the respondents 15 days to correct the delinquency. The notice contained an itemization of the delinquent amounts due under the contract and alleged that $21,750.36 was due. This amount included interest at the rate of 18% on the unpaid balance of the contract which was pursuant to paragraph 11B.

12. On August 22, 1978, being within the 15 days, respondents tendered a check for $7,394.00 which included interest at the rate of 18% pursuant to paragraph 11B on the unpaid delinquent amounts under the contract. The check was returned uncashed to the respondents on October 13, 1978.

13. A second notice of failure to remedy default and notice of forfeiture was personally served on the respondents Marwick Development, Inc., Daniel R. Southwick and Sterling Martell on the 1st day of September, 1978.

14. On September 18, 1978, Marwick Development, Inc., Sterling Martell and Daniel R. Southwick sold the property under a uniform real estate contract to Boardwalk Development Corporation. On April 12, 1979, Boardwalk was allowed to intervene as a party defendant, and on the same date, Phoenix Development Company was substituted as a party defendant in place of Daniel R. Southwick.

15. Appellant filed a motion for summary judgment and the court denied the same on the 23rd day of April, 1979.

16. The respondents filed a motion for summary judgment and the court granted the same on the 17th day of September, 1979, reinstating the contract in the respondent Boardwalk Development, Inc., and from this order the appeal is taken.

Many questions arise in the Court's mind as to the adequacy of the notices, but they are not raised in this appeal and the Court declines to comment on them. The two questions that are before the Court are whether the two notices of default dated the 15th day of May, 1978, and the 6th day of June, 1978, and the subsequent notice of failure to remedy default and notice of forfeiture dated the 14th day of July, 1978, to which the respondent did not respond, forfeited the respondent's interest in the contract, or whether the subsequent notice of default dated the 9th day of August, 1980, giving the respondent 15 days to respond in which they did tender a check, reinstated any prior forfeitures under the contract and in effect did away with all prior notice. Second, whether there are any questions of fact involved in the interpretation of the uniform real estate contract and particularly paragraph 11B which would require that the matter be remanded to the district court for an evidentiary hearing. The correct interpretation of paragraph 11B would also require determination as to the sufficiency of the tender made by the respondents to prevent the forfeiture of the contract.

■ This Court has consistently held that in order to forfeit a purchaser's interest under a uniform real estate contract, the seller must comply strictly with the notice provisions of the contract. *Hansen v. Christensen*, Utah, 545 P.2d 1152 (1976), contract for the sale of land but not a uniform real estate contract. *Paul v. Kitt*, Utah, 544 P.2d 886 (1975). The provisions in the uniform real estate contract are not self-executing, and to enforce them, it requires some affirmative act on the part of the seller to notify the buyer of what spe-

cific provision in the contract the seller is proceeding under and state what the buyer must do to bring the contract current. *Fuhriman v. Bissegger*, 13 Utah 2d 379, 375 P.2d 27 (1962); *Leone v. Zuniga*, 84 Utah 417, 34 P.2d 699 (1934).

In this case, the giving of notice of default twice and then a notice of forfeiture followed by another notice of default to bring the contract current within 15 days or forfeiture would result would be misleading. This would leave some doubt in the respondents' minds as to what the appellant expected and leave the respondent to believe that strict compliance with the contract was not required and that he would have additional time granted him by the appellant's letter. For this reason, the Court holds the respondents did have 15 days as set out in the August 9th notice of default or until the 24th day of August to bring the contract current.

The question that faced the trial court and also the question before this Court is what is the interpretation of paragraph 11B of the contract and is it ambiguous? Both parties claim that it is clear and unambiguous on its face, but each interpret it in a different manner. The appellant claims that it means 18% interest on all amounts unpaid on the balance of the contract. The respondents claim it means 18% interest on all delinquent amounts unpaid under the contract. The respondents correctly argue that parol evidence is inadmissible to alter a contract that is clear an unambiguous on its face, but in their next breath, they make the contract ambiguous by taking a position opposite to the appellants. Both interpretations are tenable and evidence should be taken to determine the intent of the parties at the time the contract was entered into.

It is a well-settled principle of law that summary judgment can only be granted when there is no dispute as to a material fact. *Russell v. Park City Utah Corp.*, 29 Utah 2d 184, 506 P.2d 1274 (1973); *Controlled Receivables, Inc. v. Harman*, 17 Utah 2d 420, 413 P.2d 807 (1966). The purpose of summary judgment is to save

the expense and time of the parties and the court, and if the party being ruled against could not prevail when the facts are looked at most favorably for his position, then summary judgment should be granted. *Holbrook Co. v. Adams*, Utah, 542 P.2d 191 (1975). If there is a question of fact raised by the pleadings or affidavits, the court is precluded from granting summary judgment. *Hatch v. Sugarhouse Finance Co.*, 20 Utah 2d 156, 434 P.2d 758 (1967). Appellant points out that the answer of the respondents raises questions of fact as to whether paragraph 11B was agreed to by the parties at the time the contract was entered into and also that the paragraph is subject to different interpretations.

The affidavit of Steven Thomas, the real estate agent, which was filed by the appellant, sustains the position of the appellant as to his interpretation of the contract and that the parties agreed to paragraph 11B at the time the contract was entered into. The respondents counter with an affidavit by Robert L. Moody, and this affidavit is in direct conflict with the Smith affidavit and takes respondents' position and raises factual issues that can only be determined by a trial of the matter. Based on the foregoing, the order granting summary judgment is reversed and the matter is remanded to the district court for further proceedings.

HALL and STEWART, JJ., concur.

WILKINS, J., does not participate herein.

CROCKETT, Chief Justice (concurring with comment):

The conclusion arrived at by the trial court and approved in the dissent impresses me as just and reasonable. Nevertheless, I do not see the wording of the contract to be so unequivocally clear that it should be so ruled as a matter of law. Therefore, I concur in the main opinion and the order to remand for trial.

MAUGHAN, Justice (concurring and dissenting):

The judgment of the trial court should be affirmed in this action. I disagree with the

majority opinion that paragraph 11B must be deemed ambiguous; and, therefore, evidence must be taken to determine the intent of the parties at the time they entered into the contract.

Paragraph 11B provides:

"At any time, and for whatever length of time, the contract may be delinquent or in default by Buyer, for any reason the interest rate *on all amounts unpaid under this contract* shall increase to eighteen percent (18%) per annum. The Seller further covenants and agrees that he will not default in the payment of his obligations against said property." [Emphasis supplied]

The trial court interpreted this paragraph as meaning that interest should increase to 18% on all amounts unpaid and which are currently due under the provisions of the contract and not the entire unpaid contract balance which is referred to in paragraph 8. The trial court ruled that plaintiff was entitled to assess the penalty provision of 18% interest per annum on all amounts due and unpaid on the contract during the period there was a default thereunder.

Both parties contend the phrase "on all amounts unpaid under this contract" is unambiguous, the disagreement focuses on a question of law: should the phrase be interpreted to mean delinquent installments or the outstanding contract balance?

It is a question of law for the trial court as to whether an ambiguity exists in a written instrument so as to authorize the admission of extrinsic evidence to explain it. Generally, an ambiguity arises when the meaning or application of words in a written agreement is doubtful and uncertain.[1] The meaning and effect to be given a contract depends upon the intent of the parties, which is to be ascertained by reviewing the entire contract and all of its parts in their relationship to each other.[2]

When the disputed phrase is construed in conjunction with other provisions in the contract, the meaning is clear that it has reference to the monthly installment payments. Paragraph 3 provides for monthly installments until the balance is paid in full; it further specifies:

"... Said payments are to commence on December 1, 1977, and each subsequent month to be due and payable on the first day of each month."

In paragraph 4, the Buyer is given the option to pay "amounts in excess of the monthly payments upon the unpaid balance, "but the Buyer must make an election as to the application "at the time the excess payment is made."

Repeatedly throughout the contract there is a clear distinction made between the terms "unpaid contract balance" and "regular monthly installments." Under the agreement, only the monthly installment is due and payable; and, therefore, it is the only amount that can be delinquent and in default by being unpaid and thus subject to the 18% interest.[3]

Finally, under paragraph 16C, the Seller has the option if the Buyer fails to make any payment "to declare the entire unpaid balance hereunder at once due and payable" and treat the contract as a note and mortgage and foreclose the same. Since the seller did not elect to exercise this option, the only amounts due and payable under the specific terms of the agreement were the monthly installment payments. The trial court did not err in its interpretation of the disputed phrase.

---

1. *Winegar v. Smith Investment Company*, Utah, 590 P.2d 348, 350 (1979).

2. *Thomas J. Peck & Sons, Inc. v. Lee Rock Products, Inc.*, 30 Utah 2d 187, 191, 515 P.2d 446 (1973); *Big Butte Ranch, Inc. v. Holm*, Utah, 570 P.2d 690, 691 (1977).

3. Paragraph 14 provides for interest if the Buyer defaults in payment of taxes, insurance, etc., and the Seller elects to pay them.