**Dale M. MADSEN and Bobby G. Madsen, et ux., Plaintiffs and Respondents,**

v.

**Christian A. ANDERSON and Linda P. Anderson, et ux., Defendants and Appellants.**

No. 18228.

Supreme Court of Utah.

June 30, 1983.

Glen M. Richman and Dennis L. Wright, Salt Lake City, for defendants and appellants.

Heber Grant Ivins, American Fork, for plaintiffs and respondents.

STEWART, Justice:

This is an appeal from a judgment enforcing a forfeiture clause in a Utah uniform real estate contract. The trial court ruled that the forfeiture clause was triggered by the buyers' failure to reimburse the sellers for their payment of property taxes on the subject real estate. We reverse.

In 1975 defendants Christian and Linda Anderson (the buyers) executed a uniform real estate contract for the purchase of a home and lot in Alpine, Utah, from plaintiffs Dale and Bobby Madsen (the sellers). At the time, the buyers were living out of state and were hoping for a job transfer to Utah. The transfer never came, and the buyers currently reside in Santa Fe, New Mexico.

The purchase price of the home and lot was $20,000. The buyers paid $3,000 down, and have since made timely purchase payments of $147.53 per month. Since the purchase the home has been rented. The rent has been collected and the property managed by Alpine Park Realty, a local realtor, which the buyers have designated as their agent.

Under the terms of the contract, the buyers are obligated to pay the property taxes.[1] If the buyer does not, paragraph 14 provides that

> [t]he Seller may, at his option, pay said taxes . . ., and if the Seller elects so to do, then the Buyer agrees to repay the Seller upon demand, all such sums so advanced and paid by him, together with interest thereon from date of payment of said sums at the rate of ¾ of one percent per month until paid.

Paragraph 16 provides alternate remedies for the seller "[i]n the event of a failure to comply with the terms hereof by the Buyer." Under subparagraph 16A, the seller is released from his obligation to convey the property, and the buyer forfeits his purchase payments as liquidated damages.

Although the contract obligates the buyer to pay the property taxes, neither party made arrangements to have the tax assessment notices sent to the buyers, and the sellers have continued to receive the tax notices since the contract was executed. In 1976, the sellers paid the property taxes but made no demand on the buyers for reimbursement under paragraph 14. In 1977, the sellers forwarded the tax notice to the buyers' agent, who promptly paid the taxes. In 1978, the sellers did not receive a tax notice, apparently because they had moved to a new address.

In 1979 the sellers received a tax notice which said that the property had been sold for prior taxes. Understandably upset, they contacted the county assessor and learned that the property had not actually been sold. They paid the taxes outstanding for the years 1978 and 1979. Added together, the total amount paid by the sellers for taxes in 1976, 1978 and 1979 was $690.93.

---

1. Paragraph 11 provides:
   The Buyer agrees to pay all taxes and assessments . . . which may become due on these premises during the life of the agreement.

On November 14, 1979, the sellers for the first time invoked paragraph 14 of the contract for reimbursement of taxes paid and demanded by letter that the buyers repay the $690.93 plus interest at the rate of ¾ of 1% per month. The letter warned that if the buyers did not pay within 90 days, the sellers would declare a forfeiture under paragraph 16A.

The buyers relayed this information to Tom Anderson, their agent at Alpine Park Realty (and the brother and brother-in-law of the buyers). On November 26, 1979, Anderson sent a letter to the sellers which stated that the buyers desired to provide timely payments of the taxes, that they had previously requested the sellers to forward the tax notices, but that their requests had been "without success." The letter then stated:

> It is difficult . . . to do these things when we cannot receive the necessary information and cooperation from you. Please send receipt of all tax payments made by you on the property in Alpine and we will forward payment to you . . . .

On March 18, 1980, more than 90 days after their initial letter to the buyers, the sellers sent a follow-up letter to the buyers. The letter again demanded the $690.93 plus interest, and further demanded $98 in legal expenses incurred in preparing the demand letters. The letter again warned that if the buyers did not repay the $690.93, the sellers would declare a forfeiture. Pursuant to subparagraph 16A, the letter gave the buyers five days from receipt of the letter to make the repayment. As evidence of the taxes paid by the sellers, two photocopies were attached to the letter: one of a check made out by the sellers to the "Utah County Treasurer" for $690.93; and one of a "Utah County Tax Notice [for] 1979," which assessed a tax payment of $227.68.

Three days later, on March 21, 1980, the buyers responded by letter through the attorney of Alpine Park Realty. The letter promised immediate reimbursement for the taxes, but sought more reliable evidence of the taxes paid on the property in question.[2] No better evidence was sent and the buyers failed to remit the money asked for within the five days.

Consequently, on April 22, 1980, the sellers served a five-day notice to quit on the buyers. See U.C.A., 1953, §§ 78–36–3, –6. On May 14, 1980, the buyers tendered a check for $690.93, but it was refused by the sellers because it was too late, and because it did not include the requested attorney's fees. Soon after, the buyers tendered a second check, which included the attorney's fees, but sellers again refused it.

In June, 1980 the sellers instituted the present action for termination of the contract, forfeiture of all payments under the contract (plus whatever equity there was in the property), and an order to evict the buyers and their tenants for unlawful detainer. The buyers deposited $690.93, plus interest and attorney's fees, with the clerk of the court.

The trial court ruled for the sellers. It concluded as a matter of law that the buyers had been given reasonable notice of the sellers' demand for reimbursement pursuant to paragraph 14, and that the buyers' failure to reimburse the sellers therefore constituted a breach of that contract within the terms of paragraph 16. Accordingly, the court ruled that the buyers had forfeited their contract payments, and awarded the property to the sellers on condition they pay the buyers $1,000 as an "equity."

On appeal, buyers argue that their failure to reimburse the sellers did not trigger the forfeiture provisions of subparagraph 16A. They assert that if, pursuant to paragraph 14, a seller elects to pay taxes on the buyer's behalf, then the seller has no remedies under paragraph 16.

---

2. The letter stated in relevant part:
   Please be advised that my client informs me the taxes to which you refer will be immediately paid. For your information, all tax notices for the property have been made to the [sellers]. The [buyers] have been unable to obtain these notices from the [sellers] in order to make payment. If the [sellers] would make timely delivery of the tax bill to the [buyers], it would be paid without difficulty.

■ We reject this argument. The buyers advance no reasons why we should not interpret paragraphs 14 and 16 according to their plain sense. As quoted above, paragraph 14 expressly provides that if a seller elects to pay taxes for the buyer, then the buyer is obligated to "repay the seller upon demand." Under paragraph 16 a seller may enforce alternative remedies (including liquidated damages under subparagraph 16A) "[i]n the event of a failure to comply with the *terms* hereof by the Buyer." (Emphasis added.) Clearly, one of those "terms" is the buyer's reimbursement obligation under paragraph 14.

The buyers also argue that even if a breach of paragraph 14 can trigger the liquidated damages provisions of paragraph 16A, the notice by the sellers in this case was not sufficient to trigger that provision.

■ As a general rule in Utah, parties to a contract may agree to liquidated damages in the case of breach, and such agreements are enforceable if the amount of the liquidated damages agreed to is not disproportionate to the damages actually sustained. *E.g., Soffe v. Ridd,* Utah, 659 P.2d 1082 (1983); *Robbins v. Finlay,* Utah, 645 P.2d 623 (1982); *Johnson v. Carman,* Utah, 572 P.2d 371 (1977); *Perkins v. Spencer,* 121 Utah 468, 243 P.2d 446 (1952). *Accord Restatement (Second) of Contracts* § 356 (1981). Thus, this Court has generally upheld forfeiture clauses in uniform real estate contracts and other land installment-purchase contracts, except that it has modified the amount forfeited in cases where that amount is so excessive and grossly disproportionate as to be unconscionable or "shock the conscience of the Court." *Compare, e.g., Park Valley Corp. v. Bagley,* Utah, 635 P.2d 65 (1981); *Corporation Nine v. Taylor,* 30 Utah 2d 47, 513 P.2d 417 (1973); *Strand v. Mayne,* 14 Utah 2d 355, 384 P.2d 396 (1963), upholding a forfeiture provision, *with Soffe v. Ridd, supra; Johnson v. Carman, supra; Perkins v. Spencer, supra,* modifying the amount forfeited. *See generally* 8A *Thompson on Real Property* § 4474 (1963 repl. vol.).

However, even in cases where the amount forfeited is not grossly disproportionate, excessive, or unconscionable, the enforcement of a forfeiture provision in a uniform real estate contract can work harsh results on the buyer. Unlike a foreclosure of a mortgage or a trust deed, which gives the buyer a statutory right of redemption, *see* U.C.A., 1953, §§ 57–1–31, 78–37–6; *Soffe v. Ridd, supra,* 659 P.2d at 1084, a forfeiture under a uniform real estate contract completely forecloses the buyer's rights in the property. The undesirability of such a result is well-stated by the legal maxim that "the law abhors forfeiture." *E.g., SAS Partnership v. Schafer,* Mont., 653 P.2d 834, 837 (1982); *Eisele v. Kowal,* 11 Ariz.App. 468, 471, 465 P.2d 605, 608 (1970).

Because forfeitures are usually harsh, we have disfavored them in cases where the notice to the buyer of the impending forfeiture is uncertain as to the performance demanded, or misleads the buyer into thinking that the forfeiture provision will not be strictly enforced. *See First Security Bank v. Maxwell,* Utah, 659 P.2d 1078 (1983); *Grow v. Marwick Development, Inc.,* Utah, 621 P.2d 1249 (1980). *Cf. Wingets, Inc. v. Bitters,* 28 Utah 2d 231, 500 P.2d 1007 (1972) (terms of the forfeiture provision must be clear and unambiguous).

In *Grow v. Marwick Development, Inc., supra,* the sellers and buyers had executed a standard uniform real estate contract. When the buyers failed to make certain payments and to pay certain taxes, the sellers sent the buyers two notices of default, a notice of forfeiture, and a third notice of default. The buyers tendered payment in full within the time allowed by the third notice of default, but the sellers rejected the tender and sought to enforce the notice of forfeiture. We held that the buyers could rely on the third notice of default, stating:

In this case, the giving of notice of default twice and then a notice of forfeiture followed by another notice of default to bring the contract current within 15 days or forfeiture would result would be misleading. This would leave some doubt

in the [buyers'] minds as to what the [seller] expected and leave [sic] the [buyer] to believe that strict compliance with the contract was not required and that he would have additional time granted him by the [seller's] letter [i.e., the third notice of default].

621 P.2d at 1252.

We think that the principles relied upon in *Grow* are applicable to the instant case. Under the provisions of paragraph 14, the sellers had the right to pay the property taxes and obtain reimbursement thereafter from the buyers. The sellers did not, however, forward the tax notices, either receipted or unreceipted, to the buyers. The buyers were thus led to expect that when taxes became due, the sellers would pay.

Under these circumstances, it was not unreasonable for the buyers, after the sellers had sent their first demand letter pursuant to paragraph 14, to request copies of the tax notices for verification of the reimbursement sought. Although the buyers concede that they could also have obtained this same information from the county tax assessor, paragraph 14 must be read in light of the covenant implicit in every contract that the parties will deal fairly, extend reasonable cooperation, and act in good faith. *Zion's Properties, Inc. v. Holt*, Utah, 538 P.2d 1319 (1975); *State Automobile and Casualty Underwriters v. Salisbury*, 27 Utah 2d 229, 494 P.2d 529 (1972); 17A C.J.S. *Contracts* § 328 (1963). When a seller pays taxes under paragraph 14 and then seeks reimbursement from a buyer, it is only reasonable for the seller to provide adequate verification that the taxes were paid and in the amount claimed.

Moreover, since the sellers' second demand letter partially complied with the buyers' request by including a copy of only *one* of the tax notices for $227.68, together with a copy of the cancelled check for $690.93, the buyers could reasonably have continued to expect that the sellers would provide the remaining tax notices on request, especially since the amounts shown on the tax notice and the check were discrepant.

As in *Grow, supra,* the sellers' action in this case was somewhat misleading. It left "some doubt in the [buyers'] minds as to what was expected," *Grow, supra,* at 1252, and led them to believe that the sellers might be willing to forward *all* of the tax notices before reimbursement was due. This notion is apparent in both the buyers' reply letters to the sellers.

In requesting tax notices from the sellers, the buyers clearly were not seeking to avoid payment of the taxes. Their monthly purchase payments had always been consistently and timely made, and the one time that the sellers had forwarded the tax notice to them (in 1977) they had promptly paid it. Thus, this is not a case where the buyers have intentionally or negligently abandoned the contract as, for example, was the case in *Park Valley Corp. v. Bagley*, Utah, 635 P.2d 65 (1981).

We hold, therefore, that the buyers did not forfeit their rights under the contract. Accordingly, the judgment of the trial court is reversed and the buyers' rights under the contract should be reinstated, subject to their reimbursement to the sellers of $690.93 for the taxes paid, plus interest of ¾ of 1% per month from the time the taxes were paid.

Reversed and remanded for proceedings not inconsistent herewith. Costs to appellants.

HALL, C.J., and HOWE, OAKS and DURHAM, JJ., concur.