2009 UT App 387

**David RICHARDSON, Plaintiff and Appellee,**

v.

**Cathleen HART, Defendant and Appellant.**

No. 20080948–CA.

Court of Appeals of Utah.

Dec. 24, 2009.

Frank S. Warner, Ogden, for Appellant.

Stephen F. Noel, Ogden, for Appellee.

Before Judges BENCH, THORNE, and McHUGH.

OPINION

McHUGH, Judge:

¶ 1 Cathleen Hart appeals from the trial court's judgment in favor of David Richardson, which terminated Hart's lease and option to purchase a condominium owned by Richardson. Hart contends that the trial court erred in finding that the option to purchase expired at the end of the initial term of the lease. We reverse and remand.

BACKGROUND

¶ 2 The relevant facts in this case are largely undisputed. On February 22, 2003, Hart and Richardson entered into a "Residential Lease/Purchase Agreement" (the Agreement), giving Hart both the right to lease a condominium that Richardson owned in Eden, Utah (the Property), and an option to purchase the Property (the Purchase Option).[1] Under the Agreement, Hart was to receive a credit of $200 from every rent payment toward the purchase price if she exercised the Purchase Option. The Agreement had a fixed term of twelve months, which Hart could extend for an additional six months by giving Richardson written notice. After the fixed term expired, the Agreement would continue on a month-to-month basis if Richardson accepted rent.

¶ 3 When the initial twelve-month term expired in early 2004,[2] Hart continued to pay rent and the Agreement continued on a month-to-month basis. Both during the fixed term of the Agreement and thereafter, most of Hart's rent payments were late, sometimes by as much as several months. When Hart's payments were late, she received regular late notices from Escrow Specialists, the company Richardson employed to collect Hart's monthly payments. Upon payment, Hart received a receipt showing the amount of any past due rent and delinquent late fees, as well as an accounting of the

1. The Agreement was originally between Richardson and a property investment company, and was entered into on February 15, 2003. The property investment company assigned its interest to Hart a week later on February 22, 2003.

2. There was evidence at trial that the parties sought to "modify the effective date of the Agreement to April 1, 2003." However, the trial court used February 15, 2003—the date when Richardson entered into the Agreement with the property investment company—as the effective date of the Agreement because the modified date did not affect the outcome of the case.

portion of her payment that would be credited towards principal if she exercised the Purchase Option. Despite the late payments, Richardson continued to accept Hart's rent and Hart remained in possession of the Property.

¶ 4 On July 27, 2005, more than a year after the fixed term of the Agreement expired, and with Hart owing $5065.50 in back rent and late fees, Richardson served Hart with a "Three Day Notice To Pay Or Quit." Two days later, Hart paid the $5065.50 in back rent and late fees, sought to extend the Agreement for an additional six months,[3] and gave Richardson written notice that she intended to exercise the Purchase Option, but Hart did not tender the purchase price at that time.[4] Richardson refused to sell the Property to Hart, stating that the Purchase Option had expired. On August 1, 2005, Richardson served Hart with a notice requiring her to vacate the Property within thirty days. Hart continued to assert her right to exercise the Purchase Option and refused to leave the Property.

¶ 5 Richardson and Hart each brought suit. Richardson alleged that Hart was in unlawful detainer of the Property, while Hart claimed that she retained a valid option to purchase it. The trial court consolidated the two cases and held a one-day bench trial. After hearing testimony from the parties and their witnesses, the trial court ruled in favor of Richardson, holding that under the unambiguous terms of the Agreement, "the lease term . . . terminated along with the option one year [after the parties entered into the Agreement]." The trial court further concluded, "Because [Hart] failed to timely exercise [the Purchase O]ption pursuant to the terms of the Agreement, [Hart] is without a right to purchase the [P]roperty." The trial court ordered Hart to vacate the Property by August 1, 2008, to pay Richardson rent through that date, and to pay $14,388.87 "as

compensation for [Richardson]'s attorney[ ] fees and costs."[5] Although Richardson also argued that the Purchase Option terminated as a result of Hart's late rent payments, the trial court did not make findings of fact or conclusions of law on that claim, nor did the trial court make any findings of fact regarding Hart's argument that Richardson failed to comply with the Agreement's notice provisions. Hart appeals from the judgment of the trial court.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Hart argues that the trial court "failed to correctly interpret the plain meaning of the language of the [A]greement" when it held that the Purchase Option terminated at the conclusion of the fixed twelve-month term of the Agreement. "We review a district court's interpretation of a written contract for correctness, granting no deference to the court below." *Café Rio, Inc. v. Larkin–Gifford–Overton, LLC,* 2009 UT 27, ¶ 21, 207 P.3d 1235.

¶ 7 In addition to his contention that the trial court correctly interpreted the Agreement, Richardson urges us to affirm the trial court's ruling based on the alternate grounds that Hart's late payments terminated her right to exercise the Purchase Option and that Hart never actually exercised the Purchase Option because she failed to tender payment in full when she told Richardson that she intended to exercise it. "[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory *apparent on the record,*" *Bailey v. Bayles,* 2002 UT 58, ¶ 13, 52 P.3d 1158 (internal quotation marks omitted), and "the facts as found by the trial court are sufficient to sustain the decision of the trial court on the alternate ground," *id.* ¶ 20.

---

3. The trial court found that Hart's right to extend the Agreement for six months expired when she failed to exercise that right before the initial fixed term of the Agreement expired. Hart does not challenge that ruling on appeal, and therefore, we do not address it further.

4. Hart sought to exercise the Purchase Option because she had agreed to sell the Property, and

on August 5, 2005, she entered into a real estate purchase contract with a third party.

5. The attorney fees award was based on a provision in the Agreement allowing the prevailing party to recover attorney fees in an action for enforcement of the Agreement.

## ANALYSIS

### I. The Agreement Is Ambiguous with Respect to the Termination of the Purchase Option.

¶ 8 We begin our analysis by first determining whether the meaning of the Agreement is apparent from the document itself or whether the contract is ambiguous. *See Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 17, 84 P.3d 1134 ("When interpreting a contract, we look to the writing itself to ascertain the parties' intentions. . . . If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." (citation and internal quotation marks omitted)). "[A]mbiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Café Rio,* 2009 UT 27, ¶ 25, 207 P.3d 1235 (internal quotation marks omitted).

¶ 9 Hart argues that the trial court was correct in finding that the Agreement was unambiguous but that the trial court erred when it found that the Purchase Option expired at the conclusion of the fixed twelve-month term. Instead, Hart maintains that "[t]he correct interpretation of the [A]greement is one which results in the [Purchase O]ption provisions surviving beyond the fixed term of the [A]greement." Hart points to several aspects of the Agreement that she maintains support her interpretation. Hart first contends that the title of the Agreement, which reads "RESIDENTIAL LEASE PURCHASE AGREEMENT," and the designation of the parties in the Agreement as "Seller/Landlord" and "Tenant/Buyer" "impl[y] that the [A]greement is something different than a traditional lease containing a separate option provision." Hart next relies on the Agreement's provision that upon expiration of the fixed term, "this [A]greement shall become a month to month agreement if [Richardson] accept[s] rent from [Hart]." Rather than limiting continuation to the lease only, Hart notes that this provision extends the entire

Agreement, which, she contends, includes the Purchase Option.

¶ 10 Hart further maintains that the Agreement's provisions relating to the exercise, default, and forfeiture of the Purchase Option also indicate that the Purchase Option continued beyond the fixed term. These provisions state as follows:

37. Option to Purchase:

(a) [Richardson] grants to [Hart], the right to purchase [the P]roperty conditioned upon full compliance by [Hart] with all terms of this Agreement.

(b) [Richardson] agrees that upon exercise of the option [Hart] shall be credited at close of escrow with $200.00 from each monthly rental payment.

. . . .

41. Exercise of Option:

(a) The option may be exercised by [Hart], as long as [Hart] is not in default of the terms and conditions of this Agreement.

(b) To exercise the option, [Hart] should mail a written certified signed receipt of notice to [Richardson].

. . . .

49. Default: The occurrence of the following shall constitute a material default and breach of Contract by [Hart]. Any failure by [Hart] to pay rent on time or perform any provisions of this lease to be performed by [Hart] where such a failure continues thirty (30) days after written notice thereof by [Richardson] will constitute a material breach of this contract and forfeit the option to purchase. In addition, the term of this contract will immediately become month to month.

According to Hart, the absence of any language stating that the Purchase Option would expire at the end of the fixed term indicates that the parties intended the Purchase Option to continue. Thus, Hart claims she had the right to exercise the Purchase Option "as long as [she was] not in default of the terms and conditions of th[e] Agreement," and that Richardson was required to give her thirty days notice and an opportunity to cure before she could be found in

default, thereby justifying termination of the Agreement.

¶ 11 In response, Richardson argues that the Purchase Option "runs parallel with, but independent of, the lease," and that, as the trial court held, the Purchase Option expired at the conclusion of the fixed term. In support of his argument, Richardson contends that the Agreement had "no express terms requiring or even suggesting that the [Purchase] Option should survive indefinitely during a month-to-month tenancy." Richardson further contends that the Agreement treated the tenancy and Purchase Option separately, in that it requires separate consideration for the Purchase Option [6] and states that if Hart is late with any payments, "the term of this contract will become a month to month agreement and any option to purchase will be revoked." [7] Richardson also notes that at least one court in California has interpreted a purchase option within a similar lease agreement as expiring with the expiration of the fixed term of the lease. *See Spaulding v. Yovino–Young,* 30 Cal.2d 138, 180 P.2d 691, 694 (1947).

¶ 12 In reviewing the parties' proposed interpretations, we cannot say that either interpretation is untenable. Indeed, as Hart points out, the first paragraph of the Agreement seems to indicate that all of the Agreement's provisions, including the Purchase Option, carry over into the month-to-month term. Yet, it is also true that, as Richardson argues, at least one provision in the Agreement treats the tenancy and Purchase Option separately, that the Purchase Option is supported by separate consideration, and that the Agreement lacks any express terms "suggest[ing] that the parties intended for the [Purchase] Option to continue" beyond the fixed term. Because both Richardson and Hart have proposed reasonable and ten-

able interpretations of the Agreement and we are unable to determine which interpretation was intended from the four corners of the Agreement, we conclude that the Agreement is ambiguous regarding the expiration of the Purchase Option. *See Grow v. Marwick Dev., Inc.,* 621 P.2d 1249, 1252 (Utah 1980) (holding that a contract was ambiguous even though both parties "claim[ed] that it [was] clear and unambiguous on its face," because "each [party] interpret[ed] it in a different manner," and both positions were tenable).

## II. Findings of Fact Are Required on the Alternate Grounds.

¶ 13 Typically, once we determine that a contract is ambiguous, we remand to the trial court for further proceedings to consider extrinsic evidence relevant to the intent of the contracting parties. *See generally id.* (holding that because the contract was ambiguous, the case had to be remanded for further proceedings). Richardson argues, however, that a remand is unnecessary because we may affirm the trial court's ruling on the alternate grounds that Hart's late payments resulted in the loss of the Purchase Option, and that Hart's attempted exercise of the Purchase Option was inadequate because she failed to tender payment of the purchase price in full when she informed Richardson of her intent to exercise the Purchase Option. In response, Hart asserts we may not affirm on these alternate grounds for two reasons. First, Hart contends that the law does not favor forfeitures and that Richardson failed to comply with the Agreement's notice requirements.[8] Second, Hart claims that the trial court failed to make findings of fact as to whether Hart's late payments were a material breach of the Agreement; whether any attempted tender of the purchase price

---

**6.** The Agreement requires that "[Hart] ... pay $50.00 as option consideration."

**7.** The full text of the provision states that [Richardson] expect[s] Hart] to pay rent promptly. In the event this does not occur for any reason, [Hart] will agree to pay a $5.00 per day [late fee] until full payment is received. In addition, the term of this contract will become a month to month agreement and any option to purchase will be revoked.

(Emphasis omitted.)

**8.** Richardson argues that the forfeiture analysis is inapplicable to option contracts like the one at issue here. However, Utah's appellate courts have specifically applied a forfeiture analysis in reviewing option contracts. *See, e.g., Russell v. Park City Utah Corp.,* 548 P.2d 889, 891 (Utah 1976); *Bess v. Jensen,* 782 P.2d 542, 544–45 (Utah Ct.App.1989).

would have been futile; and whether Richardson waived strict compliance with the terms of the Agreement.

### A. We May Affirm on Alternate Grounds Where the Alternate Theory Is Apparent from the Record.

■ ¶ 14 We first address Hart's contention that we may not affirm on alternate grounds in the absence of specific findings of fact by the trial court. In *Bailey v. Bayles*, 2002 UT 58, 52 P.3d 1158, the Utah Supreme Court explained that "an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." *Id.* ¶ 10 (internal quotation marks omitted). Hart correctly notes that the supreme court's holding in *Bailey* is limited to cases where the trial court made findings of fact that support the alternate theory. *See id.* ¶ 20 ("When an alternate theory is apparent on the record, the court of appeals must then determine whether the facts as found by the trial court are sufficient to sustain the decision of the trial court on the alternate ground."); *see also Angel Investors, LLC v. Garrity*, 2009 UT 40, ¶ 38, 216 P.3d 944 ("On appeal, we are 'limited to the findings of fact made by the trial court and may not find new facts or reweigh the evidence in light of [a] new legal theory or alternate ground.'" (alteration in original) (quoting *Bailey*, 2002 UT 58, ¶ 20, 52 P.3d 1158)). However, in a subsequent case, the supreme court held that findings were not required where the facts were "undisputed" and "unequivocally reveal[ed]" the grounds supporting the alternate theory. *Baker v. Stevens*, 2005 UT 32, ¶¶ 14–15, 114 P.3d 580. Thus, we may affirm on the alternate grounds advanced by Richardson only if the trial court's findings are sufficient, or the necessary facts are undisputed.

### B. Findings of Fact Are Required to Determine Whether the Late Payments Terminated the Purchase Option.

■ ¶ 15 Richardson first asserts that we may affirm on the grounds that Hart's late payments terminated the Purchase Option. Hart disagrees, contending that "the law abhors forfeitures" and that Richardson failed to comply with the Agreement's notice provision. In upholding the validity of a similar provision that, if enforced, would terminate an option to purchase, the Utah Supreme Court stated,

> It is true ... that forfeitures are not favored in the law, and that forfeiture provisions will be strictly construed against the one who seeks to enforce them. But it is also true that parties are free to contract according to their desires in whatever terms they can agree upon; and further, that the contract should be enforced according to its terms, unless that result is so unconscionable that a court of equity will refuse to enforce it.

*Russell v. Park City Utah Corp.*, 548 P.2d 889, 891 (Utah 1976) (footnote omitted). Moreover, the supreme court "has repeatedly recognized the right of parties to contract for the forfeiture of all payments made on a contract to purchase real property ... and that such right should not be lightly interfered with by the courts." *Strand v. Mayne*, 14 Utah 2d 355, 384 P.2d 396, 398 (1963). The parties' agreement should be disregarded "only when the forfeiture would be so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated, so that to enforce it would shock the conscience." *Id.*

■ ¶ 16 At trial, Hart did not argue that enforcing the terms of the Agreement would result in an unconscionable forfeiture of the Purchase Option and the portion of her rent payments to be applied toward principal, and that issue is not before us on appeal. Rather, Hart's argument is that Richardson terminated the Agreement without "complying with the termination requirements of the[ A]greement," which pertain to notice and an opportunity to remedy the breach. In support of her argument, Hart relies on *Grow v. Marwick Development, Inc.*, 621 P.2d 1249 (Utah 1980), where the supreme court held that to enforce a forfeiture provision, a "seller must comply strictly with the notice provisions of the contract." *Id.* at 1251. The supreme court explained that typical forfeiture provisions "are not self-executing, and to enforce them, it requires some affirmative act on the part of the seller to

notify the buyer of what specific provision in the contract the seller is proceeding under and state what the buyer must do to bring the contract current." *Id.* at 1251–52.

¶ 17 Here, there are two key provisions relating to the exercise and forfeiture of the Purchase Option. "We . . . consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *Café Rio, Inc. v. Larkin–Gifford–Overton, LLC,* 2009 UT 27, ¶ 25, 207 P.3d 1235 (second omission in original) (internal quotation marks omitted). The first provision sets forth the conditions precedent to Hart's exercise of the Purchase Option, requiring her to be in "full compliance" with the terms of the Agreement, which terms include the timely payment of rent.[9] Based on its plain language, this provision is a self-executing condition precedent to Hart's right to exercise the Purchase Option. However, the second provision, which defines material breach and default, does require action on Richardson's part and expressly relates to the termination of the Purchase Option. It states that "[a]ny failure by [Hart] to pay rent on time" constitutes a material breach, which will result in forfeiture of the Purchase Option "where such a failure continues thirty (30) days after written notice thereof by [Richardson]." By its express terms, this provision requires Richardson to provide Hart with thirty days' written notice of her default and an opportunity to remedy that default before Hart would forfeit the Purchase Option and any amount to be credited to principal.

¶ 18 In sum, the first provision establishes the conditions Hart was required to meet before she could exercise the Purchase Option, while the second provision sets forth the actions Richardson was required to take before Hart forfeited the Purchase Option. The only way to give both provisions effect is to interpret the Agreement as requiring Richardson to give Hart notice and an opportunity to cure before the Purchase Option could be forfeited for noncompliance. *See id.* (requiring that we "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none" (omission in original)). Richardson was therefore required to comply strictly with those requirements. *See Grow,* 621 P.2d at 1251.

¶ 19 The trial court briefly considered Hart's forfeiture argument, stating that it was "extremely concerned about the forfeiture of [Hart's] home," but was nevertheless "bound to follow the written agreement that was entered into between the parties." However, because the trial court found that the Purchase Option expired at the end of the Agreement's fixed term, the trial court did not make any specific findings of fact regarding the forfeiture of the Purchase Option and the amounts to be credited to principal, or regarding whether Richardson complied with the notice provision. Both at trial and on appeal, Hart further argued that Richardson waived strict compliance with the terms of the Agreement and that her late payments were therefore not a material breach that continued for more than thirty days after she received written notice.[10] These issues were factually disputed and, without any findings on these issues, we are unable to determine for the first time on appeal whether Richardson waived strict

---

9. Hart conceded that payments were late in oral argument, in her brief to this court, and in her testimony at trial. Hart acknowledged that, at one point, she was "a couple months behind" in her payments and that she owed $5065.50 in back payments at the time she was served with the pay or quit notice.

10. Specifically, Hart testified that Richardson came to her house in May 2005 to ask her if she still intended to exercise the Purchase Option and that he told her in December 2004 not to worry about her late payments because they would be credited toward principal if she could get caught up. Hart also introduced evidence that Richardson contacted Escrow Specialists in late 2004 to tell them that he did not want Hart to receive credit toward principal for any future late payments. Hart argued that, in light of these actions, Richardson's continued acceptance of Hart's payments constituted waiver because he knew that she still intended to exercise the Purchase Option. Richardson partly disputed that evidence at trial, testifying that he never intended to waive strict compliance with the terms of the Agreement but instead told Hart in May 2005 that the Purchase Option was no longer valid and she would need to make him a new offer before he would consider selling the Property to her.

compliance and whether Hart's late payments were a material breach of the Agreement that resulted in her forfeiture of the Purchase Option. Therefore, remand to the trial court for additional findings of fact is necessary. *See generally Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 26, 124 P.3d 269 ("Whether a breach of a contract constitutes a material breach is a question of fact."); *Chen v. Stewart*, 2004 UT 82, ¶ 23, 100 P.3d 1177 ("The issue of ... waiver [is a] mixed question[] of law and fact...."); *Coalville City v. Lundgren*, 930 P.2d 1206, 1210 (Utah Ct.App.1997) ("[W]hether a breach is material is a question of fact to be decided by the jury, unless the facts are undisputed." (internal quotation marks omitted)). Moreover, forfeiture and waiver are equitable issues which, by their nature, are highly fact-intensive and are best addressed in the first instance by the trial court. *See Chen*, 2004 UT 82, ¶ 23, 100 P.3d 1177 (noting that because "waiver [is a] mixed question[] of law and fact," we "grant broadened discretion to the trial court's findings"); *cf. Russell v. Park City Utah Corp.*, 548 P.2d 889, 891 (Utah 1976) (noting that forfeiture is an equitable determination and deferring to the trial court's ruling on that issue); *Richards v. Brown*, 2009 UT App 315, ¶ 11, 222 P.3d 69 ("[B]ecause of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion....").

**C. Findings of Fact Are Required to Determine Whether Tender Would Have Been Futile.**

■ ¶ 20 Finally, Richardson urges us to affirm on the alternate ground that Hart did not properly exercise the Purchase Option because she did not tender payment in full when she attempted to exercise the Purchase Option. In support of his argument, Richardson relies on our prior decision in *Mills v. Brody*, 929 P.2d 360 (Utah Ct.App.1996), where we held that "options to purchase that fail to specify mode of exercise or time of payment must be read to require payment upon exercise." *Id.* at 364. In response, Hart argues that tender was not necessary under *Shields v. Harris*, 934 P.2d 653 (Utah Ct.App.1997), where we held that "[t]ender is excused where it is plain and clear that a tender, if made, would be an idle ceremony ... [,] of no avail," or a "futile act." *Id.* at 655 (internal quotation marks omitted).

¶ 21 Here, Hart maintains that tender would have been futile because "Richardson made it very clear that he considered the [Purchase O]ption ... to be of no effect and that he was not going to sell." At trial, Hart similarly argued that tender would have been futile because Richardson refused to consent to close on the purchase of the Property. According to Hart, the parties could have closed within ten days of the July 29, 2005 letter informing Richardson of Hart's intent to exercise the Purchase Option, but Richardson failed to respond to phone calls from the title company Hart was using in the transaction. Richardson also acknowledged at trial that he received notice from the title company that funds were available on August 26, 2005–thirty days after he served Hart with the pay or quit notice-but he continued to refuse to close, based on his belief that the Purchase Option was no longer valid. Accordingly, remand is also required on the issue of whether tender would have been futile under these circumstances because futility is an equitable defense that, in the first instance, is best "addressed to the sense of justice and good conscience of the [trial] court," to which we accord "considerable latitude of discretion." *See id.* (affirming the trial court's ruling that specific performance of a contract for the sale of real property was appropriate because tender of the purchase price upon exercise of the option to purchase would have been futile).

**CONCLUSION**

¶ 22 The Agreement is ambiguous with respect to the expiration of the Purchase Option and additional proceedings are required for the trial court to determine the intent of the parties. We are unable to affirm the trial court's decision on alternative grounds because the findings of fact by the

trial court do not address these claims or the defenses to them. We therefore remand the matter to the trial court for additional proceedings consistent with this opinion. The parties shall bear their own costs and attorney fees on appeal.[11]

¶ 23 WE CONCUR: RUSSELL W. BENCH and WILLIAM A. THORNE Jr., Judges.

11. Pursuant to the Agreement's provision granting attorney fees to the party who prevails in an action to enforce the Agreement, both Richardson and Hart request attorney fees on appeal. Until the trial court determines on remand whether Hart may exercise the Purchase Option, we do not know which party has prevailed under the Agreement.