Gerry Leon **ADAIR** and Jane E. Adair, Plaintiffs and Appellants,

v.

Ronald W. **BRACKEN**, Reba A. Bracken, and John Does I through V, Defendants and Respondents.

No. 860116–CA.

Court of Appeals of Utah.

Nov. 24, 1987.

Gary W. Pendleton, Pendleton & Terry, St. George, for plaintiffs and appellants.

Phillip L. Foremaster, St. George, for defendants and respondents.

Before JACKSON, ORME and BENCH, JJ.

JACKSON, Judge:

Appellants Gerry Leon Adair and Jane E. Adair seek reversal of a district court judgment that denied their request for specific performance and enforced the forfeiture clause of a uniform real estate contract in favor of respondents. They present two questions on appeal: (1) Was the finding that appellants intentionally abandoned their rights under the contract clearly erroneous? (2) Was the notice given by respondents insufficient as a matter of law to terminate appellants' rights under the contract? Because we answer both of these questions in the affirmative, we reverse the judgment below.

On September 15, 1974, the parties entered into a uniform real estate contract for the appellants' purchase of two undeveloped mountain lots located in Washington County, Utah. The purchase price was $3,397.27, payable at the rate of $70 per month beginning October 15, 1974, plus six percent annual interest. The agreement was conditioned upon appellants buying out $3,002.73 equity in the property held by a third party, which they did.

The Adairs made sporadic payments to respondents for 77 months. In March of 1981, when the principal had been reduced to $1,024.05, their payments ceased. On or about August 17, 1982, the escrow agent advised appellants by letter of the delinquency and requested remittance of the principal and accrued interest. No mention was made of the consequences of failure to remit or of the sellers' intentions to pursue any of their contractual remedies. Although appellants admitted receiving this letter, they did nothing.

Respondents also did nothing further until the escrow agent sent the Adairs a certified letter, dated January 17, 1983, stating:

Please be advised that the above Escrow Account is very seriously delinquent. The last payment received on this account was on March 18, 1981, and due to the serious and continual lateness of the account, it is the intent of the Seller under said Contract, SAMBRACO, a partnership consisting of Ron Bracken and Doyle Sampson, to demand that you immediately arrange to pay off the entire balance at this time.

Please contact either myself or Mr. Bracken or Mr. Sampson for the balance due to clear the contract. If you do not respond to this demand, then the Sellers will exercise option 16A under the Uniform Real Estate Contract, and this Escrow shall immediately terminate and all documents will be returned to the Sellers. You realize, I am sure, that under this option you will forfeit all monies paid into Escrow.

Please respond within five days of the above date.

This letter, mailed to appellants' correct address with sufficient postage, was returned to the escrow holder several weeks later marked "Unclaimed." In April, 1983, respondents gave a copy of it to Gerry Adair's sister, an owner of property adjacent to the lots being sold to Adairs, for forwarding by mail to appellants along with information from Brackens about a proposed water users' association.

Aside from several unsuccessful attempts by the escrow agent to contact the Adairs by telephone, the parties once again took no further action until May 23, 1984, when the appellants tendered to respondents the principal and interest owing, plus taxes the sellers had paid that were the Adairs' responsibility under the contract. This tender was refused by respondents on the basis that the Adairs' interests in the property had been forfeited.

The Adairs sued for specific performance of the contract; the Brackens counterclaimed, alternatively asserting that appellants had abandoned the contract and that

their rights in it had been forfeited by respondents based on Adairs' default. After a bench trial, the district court judge found both that the Adairs had intentionally abandoned their contractual interests in the property and that they had been served with "Notice of Forfeiture." The court concluded that appellants were not entitled to a decree of specific performance and that the notice given by respondents was sufficient to declare a forfeiture of appellants' rights under the contract, resulting in forfeiture of their improvements and contract payments as liquidated damages. Accordingly, title to the property was quieted in respondents.

## ABANDONMENT OF THE CONTRACT

We first examine the trial court's finding of fact that the Adairs had intentionally abandoned their interests in the property and the contract at some point prior to tendering full payment in May, 1984, thereby precluding their entitlement to specific performance. In doing so, we examine all the record evidence, giving "great weight to the findings made and the inferences drawn by the trial judge" and setting them aside under Utah R.Civ.P. 52(a) only if "clearly erroneous." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987) (quoting Wright & Miller, *Federal Practice and Procedure* § 2585 (1971)). A finding is "clearly erroneous" if it is against the clear weight of the evidence or if we are otherwise firmly convinced that a mistake has been made. *Id.*

■ A purchaser of property can abandon all his or her rights and interests in a uniform real estate contract, *see, e.g., Forsyth v. Pendleton*, 617 P.2d 358 (Utah 1980), including the contractual right to notice adequate to result in forfeiture, discussed below. However, as the Utah Supreme Court has noted,

[t]he term "abandonment" in the sense involved here means the intentional relin-

quishment of one's rights in the contract; and in order to nullify such rights, there must be a clear and unequivocal showing of such abandonment. Where there is dispute as to whether this has occurred, it is usually a question of fact, to be determined from the circumstances of the particular case, which include not only nonperformance, but also expressions of intent and other actions of the parties.

*Timpanogos Highlands, Inc. v. Harper*, 544 P.2d 481, 484 (Utah 1975) (footnotes omitted).[1] More recently, the Court has observed that the intent to abandon contract rights need not be shown by the positive testimony of the purchaser, but may be inferred from the acts and conduct of the purchaser that are "clearly inconsistent with an intention to continue the use of the property." *Forsyth v. Pendleton*, 617 P.2d at 361.

■ In the case before us, the evidence in the record that supports the court's finding of abandonment consists of appellants' undisputed failure to make any payments from March, 1981 until their attempted tender in May, 1984, as well as their admitted failure to contact respondents during the period from April, 1983 until tender in May, 1984 in order to work out new payment arrangements.

On the other hand, evidence that would support a finding that appellants did not intentionally abandon their contractual rights and interests is substantial. Jane Adair testified that they visited the land "many times" between March, 1981 and May, 1984. She provided several specific examples, including camping on the land during a family reunion in 1982, snowmobiling there two times one year and once the other two years, and spending a weekend or a week there each summer. The Adairs also gave his sister their proxy to

---

1. It is obvious from the record that the trial judge did not understand that the respondents' abandonment theory was separate and distinct from their claim that they had terminated Adairs' contractual rights by proceeding under the provision in the contract for forfeiture in case of default. That the judge also was confused about the nature of the inquiry necessary to determine the appellants' intent to abandon the contract is clear from his erroneous exclusion of proffered testimony about their reasons for not making payments, specifically the Adairs' dire economic circumstances due to Mr. Adair's injury and inability to work during the period of default.

vote as landowners at a June, 1983 organizational meeting to discuss a proposed water users' association.[2]

These actions can only be regarded as unequivocal expressions of the Adairs' intent to use the property and not abandon their contractual interests in it. Furthermore, their intent after April, 1983 must be judged in light of the fact that respondents had consistently and repeatedly tolerated late payments, no payments, lack of communication, and long periods of default in the past (even after sending a notice of delinquency and a notice of default) and gave no firm indication after April, 1983 that this pattern was being changed.

We therefore conclude that the court's finding of abandonment is against the clear weight of the evidence and, as such, is clearly erroneous and must be set aside.

## FORFEITURE UNDER THE CONTRACT

■ Because the evidence does not support the finding that the appellants abandoned their contractual interests, we must next determine if those rights were nonetheless terminated by the respondents in accordance with the terms of the parties' contract.

Paragraph 16 of their uniform real estate contract sets forth three alternative remedies available to the sellers, at their option, "[i]n the event of a failure to comply with the terms hereof by the Buyer, or upon failure of the Buyer to make any payment or payments when the same shall become due, or within Thirty (30) days thereafter...." The remedies in subparagraphs B and C are an action for delinquent payments or, after written notice, declaration that the entire balance is due and subsequent treatment of the contract as a note and mortgage subject to foreclosure. Under the forfeiture option in subparagraph 16A, the sellers were to be released from their obligation to convey the property, and

the buyers were to forfeit their contract payments and improvements as liquidated damages and become tenants-at-will, "upon failure of the Buyer to remedy default within five days after written notice."

As a general rule in Utah, parties are free to contractually provide for such an enforceable forfeiture provision. *Madsen v. Anderson*, 667 P.2d 44, 47 (Utah 1983). *See Park Valley Corp. v. Bagley*, 635 P.2d 65 (Utah 1981); *Biesinger v. Behunin*, 584 P.2d 801 (Utah 1978). However, the Utah Supreme Court has limited the rule to agreements with clear and unequivocal terms, *Wingets, Inc. v. Bitters*, 28 Utah 2d 231, 500 P.2d 1007 (1972), and has consistently held that

in order to forfeit a purchaser's interest under a uniform real estate contract, the seller must comply strictly with the notice provisions of the contract. The provisions in the uniform real estate contract are not self-executing, and to enforce them, it requires some affirmative act on the part of the seller to notify the buyer of what specific provision in the contract the seller is proceeding under and state what the buyer must do to bring the contract current.

*Grow v. Marwick Dev., Inc.*, 621 P.2d 1249, 1251–52 (Utah 1980) (citations omitted). *See Lamont v. Evjen*, 29 Utah 2d 266, 508 P.2d 532, 534 (1973). In addition, the Court has disfavored forfeiture where the seller has misled the buyer into thinking that the forfeiture provision will not be strictly enforced. *See, e.g., Grow v. Marwick Dev., Inc.*, 621 P.2d 1249 (Utah 1980).

We hold that the notice provided to appellants was insufficient as a matter of law to terminate their contractual rights. Although the January, 1983 letter notified appellants of the contractual remedy the sellers intended to invoke if the default was not cured, it fatally omitted the amount the sellers were demanding, including principal, accrued interest and back tax-

---

**2.** It is apparent that, at least until April, 1983, the Brackens did not believe appellants had abandoned the contract since they then forwarded to the Adairs information about voting at this June meeting, information which would only have been relevant to appellants as persons with ownership interests in the property. In-

deed, when asked at trial why he forwarded these papers along with a copy of the January, 1983 notice of default, Mr. Bracken responded, "That's all we was asking them, for them to talk it over with us, or something, to let us know they were still alive."

es.[3] *See First Sec. Bank v. Maxwell*, 659 P.2d 1078, 1081 (Utah 1983). *See also Butler v. Wilkinson*, 740 P.2d 1244, 1257 (Utah 1987) (notice necessary to forfeit interests of buyer under uniform real estate contract would include notice of the exact amount of default).

Furthermore, even if the January letter was not insufficient in this respect, it is only one of two notices that must be given to the buyers in order to work a forfeiture pursuant to this contract. Although it could have sufficed as a notice of default required by paragraph 16A of the contract, it could not also serve as a notice of forfeiture, which the sellers were required to provide as sufficient notice of their election to terminate the contract and to forfeit buyers' interests. *Fuhriman v. Bissegger*, 13 Utah 2d 379, 375 P.2d 27 (1962); *Leone v. Zuniga*, 84 Utah 417, 34 P.2d 699 (1934). *Cf. Van Zyverden v. Farrar*, 15 Utah 2d 367, 393 P.2d 468, 470 (1964) (provision in land sale contract giving seller several alternative remedies, at his option, including forfeiture after buyer's failure to cure default within five days of notice of default, "requires the seller to make his election; and the buyer is entitled to notice that he has done so").

▪ A notice of forfeiture is a declaration that the seller is no longer just threatening to invoke this contractual remedy, but has *in fact* elected the forfeiture option—after the buyers' failure to cure the default within a reasonable time after adequate notice of default—and has thereby terminated the buyers' contractual interests. *See, e.g., Park Valley Corp. v. Bagley*, 635 P.2d at 66 (notice of forfeiture under subparagraph 16A of uniform real estate contract served on buyer who failed to cure default within three weeks after notice of delinquency). *Cf. Beckstead v. Glabe*, 632 P.2d 882, 885 (Utah 1981) (seller "declared" forfeiture of buyers' interest eleven days after service of notice that contract would be cancelled and forfeiture option used if buyers did not make past due payments). By definition, it does not give buyers the option of performance, *see*

*Dang v. Cox Corp.*, 655 P.2d 658, 662 (Utah 1982), as a notice of default must. A notice of forfeiture leaves no room for speculation about the extinguishment of the buyers' rights in the contract.

The value of a notice of forfeiture is apparent in cases such as this one, in which the sellers silently tolerated many months of nonpayment, then finally sent a delinquency notice requesting payment in August, 1982, then did nothing for five more months, sent the flawed notice of default demanding payment within five days, but then forwarded a second copy of the notice of default giving the option of performance months later. Until given adequate notice of the Brackens' actual election of their forfeiture remedy, the appellants reasonably assumed that their continued default was being tolerated, as it had been many times in the past, and that their contractual rights were intact long after the April, 1983 delivery of a copy of the January notice of default. *Cf. Tanner v. Baadsgaard*, 612 P.2d 345 (Utah 1980) (seller who waives strict compliance with payment schedule in earnest money agreement must give notice and a reasonable time to perform before thereafter strictly enforcing the time requirements).

Because respondents did not provide legally adequate notice of default and notice of forfeiture as required by their contract, they did not terminate appellants' rights pursuant to the forfeiture provision in paragraph 16 prior to the appellants' tender of full payment in May, 1984.

The judgment below is reversed, and the case is remanded to the district court for entry of judgment and an appropriate decree of specific performance consistent with this opinion. The parties are to bear their own costs on appeal.

BENCH and ORME, JJ., concur.

---

3. Since the parties' escrow agreement provided that a notice of default could be mailed to them, appellants cannot avoid being charged with notice of the contents of the certified letter of January 17, 1983 just because they failed to claim it at the post office.