**STATE of Utah, Plaintiff and Appellee,**

v.

**Kimberlee H. WINWARD, Defendant and Appellant.**

**No. 940762–CA.**

Court of Appeals of Utah.

Dec. 7, 1995.

---

Gary W. Pendleton, St. George, for Appellant.

Kenneth A. Bronston, Salt Lake City, for Appellee.

Before BENCH, GREENWOOD and WILKINS, JJ.

## OPINION

BENCH, Judge:

Defendant appeals her conviction of unlawful dealing with property by fiduciary, a second degree felony, in violation of Utah Code Ann. § 76–6–513 (1990). We reverse.

## FACTS

On appeal from a jury verdict, we recite the facts in a light most favorable to the jury's verdict. *State v. Hancock,* 874 P.2d 132, 133 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994).

In July of 1992, George and Marie Bauer lived in Henderson, Nevada, but also owned a home in Cedar City, Utah. The Bauers listed their Cedar City home for sale with ERA Realty in Cedar City. The original listing price for the home was $45,900. By the summer of 1993, the Bauer home had not been sold, so the Bauers reduced the asking price to $43,900. Defendant was employed as a realtor with ERA Realty.

Defendant employed eighteen-year-old Nicole Packer to do personal errands and odd jobs around the real estate office. Packer also lived with defendant and her husband, Kent Winward, a local attorney. Defendant and her husband approached Packer about participating in a creative series of transactions whereby Packer would purchase the Bauer home then immediately resell it for a higher amount. Any profits would be split by Packer and the Winwards. In July of 1993, Packer signed an earnest money sales agreement bearing a purchase price of $40,-000.

To complete the transaction, Packer and the Winwards needed someone to purchase the home and make the payments. Coincidentally, Vickie Bassett, one of Mr. Winward's clients, was interested in finding a home for herself and her three children. The Winwards showed the home to Bassett, although Bassett was not aware of who owned the home or who would be selling the home to her. Bassett agreed to buy the home for $58,000, consisting of a $3,000 down-payment and a $55,000 trust deed note. The defendant and her husband agreed to cover the $3,000 down-payment for Bassett in return for Bassett providing $3,000 worth of personal services to the Winwards, Packer and another individual. Bassett would thereafter assume and pay a trust deed note in the principal amount of $55,000 at thirteen percent interest.

Because Packer did not have the necessary cash or credit to purchase the home, the Winwards located Patricia Williams, a resident of Las Vegas, Nevada, who agreed to provide the money. Williams had just completed an unrelated real estate transaction, from which she authorized $45,000 to be sent to Cedar Land Title. In return for advancing the money, Williams was to be assigned the trust deed note to be paid by Bassett.

In August of 1993, all of the above-described transactions took place at Cedar Land Title. Packer purchased the Bauer home for $40,000 then sold the home to Bassett on terms which included the $55,000 trust deed note. Packer then assigned Bassett's note to Williams. After closing costs, these transactions netted a profit of $4,697.50, which was divided among defendant, her husband, and Packer.

Defendant was charged by amended information with unlawful dealing with property by fiduciary, a second degree felony. *See* Utah Code Ann. § 76–6–513 (1990). At the close of the State's case, defendant moved to dismiss the charges on grounds that the defendant's conduct did not violate section 76–6–513. The trial court denied the motion. Defendant was convicted by a jury, and this appeal followed.

## ISSUES

Defendant raises the following issues on appeal: (1) whether the facts proved at trial constitute a criminal offense under section 76–6–513; (2) whether the trial court erred in refusing to allow defendant's jury instruction requiring unanimous agreement on how defendant breached her duty; and (3) whether the trial court erred in denying defendant's motion to disqualify the prosecuting attorney and in refusing to grant an evidentiary hearing in support of that motion.

## ANALYSIS

Defendant claims the facts proved at trial do not constitute the offense of unlawful dealing with property by fiduciary. Whether a trial court correctly interprets a statute is a question of law. *State v. 392 South 600 East*, 886 P.2d 534, 537 (Utah 1994). We review a trial court's interpretation of a statute for correctness, granting no particular deference to the trial court. *World Peace Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994). The primary consideration in construing a statute is to give effect to the legislature's intent. *Sullivan v. Scoular Grain Co.*, 853 P.2d 877, 880 (Utah 1993). To discover that intent, this court looks first to the plain language of the statute. *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993). Only when the statute's language is ambiguous will we seek guidance from the legislative history and policy considerations. *World Peace*, 879 P.2d at 259.

The statute at issue in this case provided as follows:

(1) A person is guilty of theft, punishable under Section 76–6–412, *if he deals with property that has been entrusted to him* as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is a violation of his duty and which involves substantial risk of loss to the owner or to a person for whose benefit the property was entrusted.

(2) As used in this section "fiduciary" includes any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary. "Government" and "financial institution"

have meanings given in Section 76–6–411; "property" has the meaning given in Section 76–6–401(1).

Utah Code Ann. § 76–6–513 (1990) (emphasis added).[1]

Because the term "entrusted" is not defined by statute, we look to its commonly understood meaning. *Brittain v. State,* 882 P.2d 666, 671 (Utah App.1994). Webster's dictionary defines "entrusted" as, "to confer trust upon ... [to] deliver something to (another) in trust ... to commit or surrender to another with a certain confidence regarding his care, use, or disposal." Webster's Third New Int'l Dictionary 759 (3d ed. 1986). Similarly, Black's Law Dictionary defines "entrust" as follows: "To give over to another something after a relation of confidence has been established. To deliver to another something in trust or to commit something to another with a certain confidence regarding his care, use or disposal of it." Black's Law Dictionary 533 (6th ed. 1990).

In the case at bar, defendant was never entrusted with the Bauer property. A trust relationship involving real property is created only by an "act or operation of law, or by deed or conveyance in writing...." Utah Code Ann. § 25–5–1 (1995); *see also Sundquist v. Sundquist,* 639 P.2d 181, 183 (Utah 1981). The Bauers did nothing to transfer, surrender, or commit the property to defendant with any power to care, use, or dispose of the property. Defendant merely represented the Bauers in a sales-agent capacity. As an agent, defendant was only authorized to find a buyer for the property. Under its plain meaning, defendant therefore did not violate this criminal statute.

Even if the term "entrusted" is considered ambiguous, we reach the same conclusion.

The legislative history supports the opinion that entrusted property must be held in trust for another, i.e., that the fiduciary have the present ability to misapply the property. When the statute was amended in 1983, the bill's sponsor stated that the statute was applicable to "mainly cash funds that are with ... [the fiduciary], or held by him in trust." House Debate of HB 281, (Feb. 25, 1983). More specifically, the amended statute was directed at encompassing the actions of attorneys who misappropriate a client's money held in trust by the attorney. *Id.*

Moreover, although our legislature has modified some of the language, the Utah statute remains very similar to Model Penal Code section 224.13.[2] The comments to the Model Penal Code provide some guidance for understanding the word "entrusted." According to the comments, the Model Penal Code provision is expressly aimed at situations where property is "held in a trust" or "safeguarded" by the fiduciary, and where the fiduciary risks the property by investing in speculative or imprudent investments, or by disposing, encumbering, or misapplying property held for the benefit of others. Model Penal Code § 224.13 cmts. 1 & 2, at 358–361 (Official Draft and Revised Comments 1980) (footnotes omitted).

In the case at bar, defendant never "held" the property in trust, nor did she have the ability to convey, misapply, encumber, or pledge the property. The Bauers were the only persons vested with title to their property and were the only ones capable of engaging in a sale, pledge, or other transaction involving their property. Although defendant's conduct may well be a breach of her fiduciary duties, it is not a crime under section 76–6–513.[3]

---

1. Although this statute was amended in 1994, the 1990 version was in effect during the activities in question.

2. The Model Penal Code § 224.13 (1980) provides as follows:

 A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted. The offense is a misdemeanor if the amount involved exceeds $50; otherwise it is a petty misdemeanor. "Fiduciary" includes trustee, guardian, executor, administrator, receiver and any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary.

3. Certain misconduct by a fiduciary may warrant civil liability, criminal penalties under other statutes, and suspension or revocation of a professional license. However, not every breach of a

This is the first time a Utah appellate court has interpreted this statute. In so doing, we are mindful that criminal statutes are not construed strictly, but according to their fair import. Utah Code Ann. § 76–1–106 (1995). In construing this statute, however, to conclude that a real estate agent is "entrusted" with property when she is merely acting as a sales agent would be overly broad. We are careful not to interpret criminal statutes too broadly. *See State v. Burton,* 800 P.2d 817, 819 (Utah App.1990). Furthermore, we adhere to the principle that "[w]e cannot by construction liberalize [a] statute and enlarge its provisions." *State v. Paul,* 860 P.2d 992, 994–95 (Utah App.1993) (quoting *Hanchett v. Burbidge,* 59 Utah 127, 135, 202 P. 377, 380 (1921)). Accordingly, we conclude that to satisfy the "entrusted with property" requirement of the statute, defendant must have held the property in trust or had the ability to convey, transfer, use, pledge, encumber, or misapply the property. It is not enough merely to conceal or misrepresent information as an agent if the principal retained ownership and control of the property.

Because we determine that the first issue presented in this case is dispositive, we need not address the remaining issues raised.

## CONCLUSION

The breach of a fiduciary duty, standing alone, does not necessarily constitute a violation of section 76–6–513. Although defendant had a fiduciary duty to act as the real estate agent for the Bauers, she was not entrusted with the Bauer property so as to bring her actions under the purview of this criminal statute.

Defendant's conviction is therefore reversed.

GREENWOOD and WILKINS, JJ., concur.

fiduciary duty will necessarily constitute a violation of the statute at issue here.