STATE of Utah, Plaintiff and Appellee,

v.

Emer Kent WINWARD, Defendant
and Appellant.

No. 940530–CA.

Court of Appeals of Utah.

Dec. 29, 1995.

Gary W. Pendleton, St. George, for Appellant.

Kris C. Leonard, Julie George, and Jan Graham, Salt Lake City, for Appellee.

Before ORME, BENCH and JACKSON, JJ.

## OPINION

ORME, Presiding Judge:

Emer Kent Winward appeals his conviction of forgery, a second degree felony, in violation of Utah Code Ann. § 76–6–501 (1995). We reverse and remand.

## FACTS

We view the evidence in the light most favorable to the jury's verdict, but present conflicting evidence to the extent necessary to clarify the issues raised on appeal. *State v. Dunn*, 850 P.2d 1201, 1205–06 (Utah 1993).

In the summer of 1992, George and Marie Bauer listed their home in Cedar City for sale with ERA Realty. Approximately one year later, Nicole Packer,[1] in concert with defendant and his spouse, Kim Winward,[2] offered to purchase the Bauer's home for $40,000 cash, with $500 down as earnest money. The Winwards paid the $500 earnest money with a check drawn on their account at Mountain America Credit Union. Mrs. Winward, who was an ERA real estate agent, presented Packer's offer to Tom Goodman, the listing agent, who, in turn, presented the offer to the Bauers. The Bauers accepted the offer.

Packer did not possess the $40,000 purchase price for the Bauers' home, but had previously agreed, in exchange for a percentage of the profit,[3] to participate in the Winwards' plan to buy the property and immediately sell it at a higher price, using the proceeds from the second sale to fund the initial purchase. Under defendant's direction, Packer bought the property for $40,000 and closed the sale on August 6, 1993. On the very same day, Vicki Bassett purchased the property from Packer for $58,000.

At the time Bassett purchased the property, she was being represented by defendant, a licensed attorney, in a child custody dispute. Bassett told defendant that she lacked the financial means to purchase a home, but nonetheless desired to secure a home, in part, so that she could provide a more stable environment for her children. Defendant informed Bassett that he had located a home that she could purchase without a down payment and said he would arrange private financing. Bassett agreed to purchase Packer's property for $58,000 by means of a $55,000 trust deed note, with defendant assuming the remaining $3000 debt in exchange for Bassett providing personal services to defendant, his wife, Packer, and a fourth party. Defendant did not disclose to Bassett that he had a pecuniary interest in Packer's property.

Defendant's wife, through her work at ERA Realty, learned that Patricia Williams had $60,000 from the sale of a separate property which she wanted to reinvest. Accordingly, Mrs. Winward contacted Williams, who agreed to purchase Bassett's $55,000 note for $45,000 in cash.

In sum, the foregoing transactions were as follows: Bassett agreed to purchase the home from Packer on terms which included the execution of a trust deed note in the amount of $55,000. Packer assigned Bas-

---

1. At the time of the transactions that led up to defendant's ultimate conviction, Nicole Packer was a guest in the Winwards' home and in the employ of Mrs. Winward as a real estate assistant.

2. Kim Winward was tried and convicted of unlawful dealing with property by a fiduciary, a second degree felony, in violation of Utah Code Ann. § 76–6–513 (1990). Her conviction was

overturned. *See State v. Winward*, 907 P.2d 1188 (Utah App.1995).

3. At trial, defendant contested the agreed-upon amount of profit that was due to Packer upon completion of the real estate transaction. Defendant claimed the $1000 that he paid to Packer satisfied his obligation under their agreement.

sett's $55,000 note to Williams, who purchased it for the discounted sum of $45,000. Forty thousand dollars of the money provided through Williams's financing was paid to the Bauers in satisfaction of Packer's agreement to pay for the home in cash. Less certain expenses, the difference between what Williams paid and what the Bauers were owed was available as profit to Packer and her "partners." All the transactions were closed at Cedar Land Title Company on August 6, 1993.

The title company issued a check made payable to Packer in the amount of $4697.50, representing the profit generated from the sale of the home to Bassett.[4] On August 9, defendant picked up the check, endorsed Packer's name to the check, and deposited the funds into his wife's account at Mountain America Credit Union. Thereafter, defendant issued a check in the amount of $1160 to Packer, $1000 of which defendant claimed represented her fair share of the profit from the real estate transaction and $160 of which was earned by her for services unrelated to this case. Defendant did not tell Packer about the existence of the title company check payable to her, nor did he reveal to her what the actual profit of the real estate transaction had been.

In October 1993, Packer talked to Bassett and was led to believe that she had received far less than she was due.[5] Accordingly, Packer reviewed the closing documents held by the title company and discovered the existence of the $4697.50 check issued to her and endorsed with her name without her knowledge. A few months later, Packer swore out an affidavit attesting to defendant's apparent forgery. Thereafter, Mountain America Credit Union froze Mrs. Winward's account, removing approximately $2800 therefrom in order to partially compensate for the $4697.50 that the credit union had been required to pay back to the bank upon which the check was drawn.

On January 14, 1994, defendant was charged with forgery, a second degree felony, in violation of Utah Code Ann. § 76–6–501 (1995), for signing Packer's name to the title company check made payable to her. He was convicted by a jury and sentenced to a term of 1 to 15 years in the Utah State Prison. The trial court stayed the execution of the sentence and placed defendant on probation for thirty-six months. As a condition of defendant's probation, the court ordered, among other things, that he not engage in the practice of law during the three-year probationary period. Without noteworthy exception, the terms and conditions of defendant's probation were stayed by this court pending resolution of this appeal.

## ISSUES ON APPEAL

Defendant challenges his conviction contending, inter alia, that the trial court erred by allowing the State to depart from its bill of particulars and advance alternative theories as to whom he intended to defraud by means of the alleged forgery. Specifically, defendant contends that because there is not a sufficient legal nexus between his endorsement of the check and a specific intent to even conceivably defraud anyone other than Nicole Packer, the court should not have allowed evidence suggestive of an intent to

---

4. The $5000 difference between the original purchase price of $40,000 that Packer paid for the Bauer home and the $45,000 paid by Williams to finance Bassett's purchase of the home from Packer was adjusted and disbursed as follows:

| | | |
|---|---|---|
| $5000.00 | | |
| +500.00 | Earnest money paid pursuant to Packer–Bauer earnest money agreement. | |
| −110.00 | Closing costs for the sale of the home from Bauer to Packer. | |
| −692.50 | Closing costs for the sale of the home from Packer to Bassett. | |
| $4697.50 | Check issued to Nicole Packer by Cedar Land Title Company. | |

5. Because Packer bought the property for $40,000 and resold it for $58,000 it appeared, at first blush, that an $18,000 profit was made on the sale, and Packer expected to receive one third of the profit. However, viewing the entire transaction, with a clear understanding of Bassett's private financing of her purchase, reveals that the profit realized by Packer, defendant, and defendant's wife was more accurately reflected by the $4697.50 check issued by the title company to Packer, plus the value of the personal services owed by Bassett. The difference between the $55,000 due on the note from Bassett and the $45,000 paid for the note by Williams was profit which Williams, not Packer and the Winwards, stood to realize if the note were fully paid.

defraud the Bauers, Bassets, ERA Realty, or Mountain American Credit Union to come before the jury. Moreover, defendant contends the court's error was compounded by refusing to instruct the jury that forgery requires the specific intent to defraud and by incorrectly defining what it means to have a "purpose to defraud." Defendant also contends the court abused its discretion in allowing the State's expert witness to testify that defendant's actions presented "strong evidence of intent to defraud." [6]

## ANALYSIS

### 1. Admission of Evidence

Utah Code Ann. § 76–6–501 (1995) provides, in pertinent part, that "[a] person is guilty of forgery if, *with purpose to defraud anyone,* ... he ... makes ... any writing so that the writing or the making ... purports to be the act of another." *Id.* (emphasis added).

In essence, the State contends that section 76–6–501 allows it to prove defendant's guilt by introducing evidence that he committed an act of forgery while at the same time having an intent to defraud anyone. Accordingly, the State argues the trial court did not err by admitting evidence to support alternative theories as to whom defendant intended to defraud when he endorsed Nicole Packer's name to the check without her authorization.

Defendant conceded that he endorsed Packer's name on the check without her specific authorization. Thus, unlike most forgery cases, it was not necessary for the State to establish the falsity of the writing, nor was it necessary to demonstrate that defendant acted without authority. *Cf. State v. Collins,* 597 P.2d 1317, 1317 (Utah 1979) (stating that to prove crime of forgery, state must show that defendant not only used name of another, but also that she did so without authority); *State v. Gonzalez,* 822 P.2d 1214, 1216 (Utah App.1991) (same). Accordingly, the sole issue for the jury to resolve was whether defendant intended to defraud anyone when he signed Packer's name to the check without her knowledge or permission.

■ To commit forgery, one must possess the specific intent to defraud "anyone." Utah Code Ann. § 76–6–501 (1995). *See State v. Turner,* 3 Utah 2d 285, 288, 282 P.2d 1045, 1047 (1955) (Crockett, J., concurring). That is, the State need not prove exactly who the defendant intended to defraud, provided the State can prove that the defendant acted with the requisite intent to defraud. Dispensing with the requirement that the State identify the victims of the charged forgery makes sense in situations where the "victims" are not readily discernible. For example, the intent to defraud may relate to a person or persons not named in the fraudulent instrument "or to a state, county, or municipality, even though the statute in terms refers to the prejudice of the rights of persons." 36 Am.Jur.2d *Forgery* § 26 (1968). Accordingly, in certain situations, it is sufficient for the State to show that a defendant's actions were designed to defraud the public, a certain class thereof, or even multiple classes of individuals. 37 Am.Jur.2d *Fraud and Deceit* § 193 (1968).

■ However, the law does not conclusively presume that because a person signed the name of another a forgery has occurred. The act of signing another's name without permission does not constitute forgery unless it was done with the intent to defraud. *Turner,* 282 P.2d at 1047. Accordingly, to sustain a conviction for forgery, there must be a sufficient connection between the act of forgery and the intent to defraud. *See Hendershott v. People,* 653 P.2d 385, 390 (Colo.1982) (en banc) (stating that "in order to subject a person to criminal liability for a felony or serious misdemeanor, there must be a *concurrence* of an unlawful act (actus rea) and a culpable mental state (mens rea)") (emphasis added), *cert. denied,* 459 U.S. 1225, 103 S.Ct. 1232 (1983). In establishing the nexus between the intent and the act, " '[t]he law can presume the intention so far as realized in the act, but not an intention beyond what was so realized.' " *State v. Castonguay,* 663 P.2d 1323, 1326 (Utah 1983) (quoting *Thacker v. Commonwealth,* 134 Va. 767, 114 S.E. 504,

---

**6.** Defendant also contests the trial court's authority to suspend him from the practice of law as a term of his probation. However, in view of our disposition, we need not reach this issue.

505 (1922)). Moreover, even if a defendant possesses both an intent to defraud and commits the act of signing another's name without authority, a forgery conviction cannot be sustained unless the act was done in furtherance of the intention. Stated another way, a defendant who has signed another's name without permission, while possessing an intent to defraud that is completely unrelated to the unauthorized endorsement, has not committed forgery.

■ In the instant case, the victim of defendant's allegedly fraudulent conduct, insofar as tied to his unauthorized endorsement of a check payable to Nicole Packer, was easily identifiable. Defendant signed Packer's name to the back of a check made payable to her without her authorization and gave her only a portion of the proceeds. On the facts of this case, the only person that defendant could possibly have intended to defraud by engaging in this conduct was Nicole Packer.[7] Therefore, the court erred in allowing the State to present evidence suggesting defendant had committed wrongful acts against the Bauers, Bassett, ERA Realty, and Mountain America Credit Union, apparently on the assumption that the State would ultimately be able to establish that those persons and/or entities had actually been defrauded and that these frauds had been somehow accomplished by defendant's forgery of a check made payable to someone else.

Undeniably, defendant's use of Nicole Packer's name in the sale of property to one of his clients, in order to hide his involvement in the transaction, was unethical. Specifically, it was unethical for defendant to help effect a sale of the home to one of his clients at a profit without revealing that he was part of a partnership or joint venture involved in purchasing the same property on the very same day for considerably less money. *See* Utah Rules of Professional Conduct Rule 1.8(a) & (b). While defendant's subterfuge and profiteering surrounding the subsequent sale of the property to Bassett may be appalling, it is not clear that such conduct was illegal. *See State v. Winward*, 907 P.2d 1188 (Utah App.1995). Most importantly, the facts and circumstances surrounding the sale of the home to Bassett were in no way related to, or advanced by, defendant's unauthorized endorsement, and thus should not have been admitted to prove an intent to defraud as an element of the crime of forgery.

Finally, even if we were to conclude that this evidence was marginally relevant to proving the charge of forgery, a proposition which is doubtful, the trial court should still have excluded it given the danger of unfair prejudice, misleading the jury, and obfuscating the issues.[8] *See* Utah R.Evid. 403. Allowing the State to present evidence concerning defendant's unethical conduct surrounding the real estate transaction posed considerable risk of diverting the jury's attention from the criminal charge of forgery and unnecessarily prejudiced defendant by forcing him to defend against wide-ranging allegations of misconduct and dishonesty.

### 2. Jury Instructions

■ Moreover, the court's error in admitting evidence concerning transactions in which others might have been taken advan-

---

7. Certainly, given different circumstances, there could have been other intended victims of defendant's endorsement of the check. For example, defendant and Packer could have conspired to defraud the payor bank. That is, defendant could have signed Packer's name *with* her permission, presented the check to the bank, and received payment. Subsequently, Packer could have complained that she had never received the check due her from the sale of the property. Under these circumstances, the bank would ultimately issue Packer a new check if the ruse remained undetected. However, the record before us does not suggest any collaborative attempt between Packer and defendant to defraud the bank or the title company, nor was such a scheme suggested by the State at trial. In addition, defendant endorsed Packer's name to the check *after* the transactions involving the Bauers and Bassett had closed. Accordingly, it is difficult to conceive of any way that the act of signing Packer's name without her knowledge or permission, upon which the charge of forgery rests, could be in furtherance of defrauding either the Bauers or Bassett. Any fraud perpetrated on them had already been accomplished.

8. The court denied defendant's motion to exclude the evidence pursuant to Utah Rule of Evidence 403.

tage of was compounded by the court's refusal to instruct the jurors that, in order to convict defendant of forgery given the evidence before them, they must conclude that when he signed Packer's name to the check, Winward possessed the specific intent to defraud Packer. Although defendant requested specific intent instructions, the court refused to give the instructions.[9]

In the instant case, the court instructed the jury that to find defendant guilty it must conclude that he acted "knowingly and intentionally, ... with a purpose to defraud anyone, or with knowledge that he was facilitating a fraud to be perpetrated by anyone." The court defined "knowingly" and "intentionally" in terms of a general criminal intent[10] and defined a "purpose to defraud" as "simply a purpose to use a false writing as if it were genuine in order to gain some advantage." The problem with the instructions, as given, is that they "failed to explain adequately the distinction between the general and specific intent requirements or *relate those requirements to the facts of the case.*" *State v. Potter,* 627 P.2d 75, 78 (Utah 1981) (emphasis added). Absent an instruction that carefully and precisely defined specific intent to defraud—and, most importantly, conveyed to the jury that, based on the facts of this case, the only person that defendant could possibly have intended to defraud when he endorsed Nicole Packer's name on the check was Nicole Packer—the jury lacked the proper framework within which it could meaningfully evaluate the necessary elements of the crime charged.

Had the court correctly instructed the jury on the need to find a specific intent to de-

fraud, it might well have minimized the confusing and misleading effects of the problematic evidence by narrowly focusing the jury on the pivotal issue in the case. By the same token, if the evidence was well-focused, making clear that if defendant intended to defraud anyone by his unauthorized endorsement it would have to have been Packer, the jury instructions could have been less precise. Instead, however, the trial court may well have compounded the jury's likely confusion by admitting evidence concerning defendant's wrongdoings allegedly perpetrated against the Bauers, Bassett, ERA Realty, and Mountain America Credit Union, yet refusing to instruct the jurors that they could not base a conviction for *forgery* upon these separate theories of fraud that occurred, if at all, by means other than defendant's endorsing Packer's check without her permission. Accordingly, against the backdrop of the confusing evidence presented, we hold that the court erred by not sufficiently instructing the jury on the concept of specific intent as it applied to the facts of this case.

### 3. Expert Witness

Having already concluded that the court committed reversible error, we need not reach the issue of whether it was also error for the trial court to admit the testimony of the State's expert witness. However, we nonetheless believe it appropriate to address this issue because it will likely resurface in a new trial. *See* Utah R.App.P. 30(a); *Randle v. Allen,* 862 P.2d 1329, 1334 (Utah 1993); *Reeves v. Gentile,* 813 P.2d 111, 119 (Utah 1991); *Campbell v. Campbell,* 896 P.2d 635, 640 (Utah App.1995).

**9.** One instruction that the court refused to submit to the jury provides, with our emphasis, as follows:

> Instruction No. 2
>
> Before you can convict the defendant of the crime of FORGERY, a second degree felony, you must believe from all the evidence and beyond a reasonable doubt each and every one of the following elements of the offense.
>
> 1. That said act did occur on or about August 9, 1993, in Iron County, State of Utah, although the exact date is immaterial; and
>
> 3. That said endorsement was in no way authorized by Nicole Packer; and

> 4. That the defendant knew he had no such authority; and
>
> 5. *That the defendant made the endorsement with the specific intent of defrauding Nicole Packer.*

**10.** Instruction No. 13 defined these terms as follows:

> A person engages in conduct "intentionally" or with intent, when it is that person's conscious objective or desire to engage in the conduct or cause the result.
>
> A person engages in conduct "knowingly" or with knowledge, when the person is aware that the conduct is reasonably certain to cause the result.

Over defendant's objection, the court allowed a licensed attorney to offer his expert opinion that a person's role as an attorney, by itself, does not authorize him to endorse another person's name on a negotiable instrument absent some type of express or implied authority. The expert's testimony was offered in the form of rebuttal after defendant had taken the stand and testified that he had in fact endorsed Packer's name without her knowledge. Defendant objected to the expert's testimony, arguing that this rebuttal evidence was improper as defendant had never testified, nor presented other evidence, that would lead the jury to conclude that the fact that he was an attorney somehow authorized him to endorse the check without Packer's consent.

 Rebuttal evidence is proper if it is evidence tending to refute, modify, explain, or otherwise minimize or nullify the effect of the opponent's evidence. *Board of Educ. v. Barton*, 617 P.2d 347, 349 (Utah 1980). The expert's proffered testimony was not proper rebuttal evidence because its purpose was not designed to minimize the effect of defendant's testimony or undermine the foundation of his conclusions. Defendant testified that he acted as Packer's partner or co-venturer in the real estate transaction. He did not claim to be acting as her attorney. Thus, when defendant endorsed Packer's name and deposited the check, he claimed he did so with the implied authority that can accrue from a partnership or co-venture relationship, or as an accommodation or convenience to her. Accordingly, defendant's testimony was that his position as a partner or co-venturer, not his status or licensure as an attorney, provided him with the authority to sign Packer's name on her behalf.

Here, the purpose of the expert's testimony was not to rebut defendant's testimony or to otherwise set the stage for proper rebuttal. We therefore conclude that the trial court erred in allowing the expert to offer testimony on rebuttal concerning an issue that was not raised by defendant.

## APPROPRIATE RELIEF

Ordinarily, errors of the sort that are present in this case justify no more than a re-

mand to the trial court for a new trial. However, defendant contends that he is entitled to a reversal of his conviction and complete "vindication" because, absent these errors, a conviction of forgery simply cannot be sustained. We disagree.

Ignoring the erroneous admission of evidence, the incomplete jury instructions, and the improper expert testimony, a dispute still exists concerning whether, when defendant endorsed Packer's name to the check without her permission, he did so with the intent to defraud her of the difference between her proper share of the profit and the sum he actually paid to her. Simply put, a narrow factual dispute exists as to whether Packer actually received all the money defendant believed she was due from her participation in the real estate transaction. If a jury were to conclude that Packer was entitled to more of the profit, and that under the terms of her agreement with the Winwards, defendant knew she was, defendant would be guilty of the crime of forgery because he signed Packer's name to the check with the intent of preventing her from receiving money that was rightfully hers.

A properly instructed jury which heard only relevant evidence may well, of course, conclude otherwise. Nonetheless, a defendant who shows he was convicted unfairly is ordinarily entitled to a new trial, not to an acquittal. Accordingly, we remand to the trial court for such proceedings, if any, as may now be appropriate.

## CONCLUSION

Given that defendant's unauthorized endorsement can at most be seen as an attempt to defraud Packer, it was error for the court to admit evidence supporting alternate theories (or innuendos) concerning whom defendant intended to defraud. Moreover, the court's refusal to properly instruct the jury on the requirement of finding specific intent, and its failure to explain how such a requirement relates to the facts of the case, exacerbated the potential that the jury would convict defendant based on wrongful conduct not directly connected to his unauthorized endorsement of the check. Finally, the court

should have excluded the expert rebuttal testimony elicited by the State because it concerned an issue that was not raised by defendant.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

BENCH and JACKSON, JJ., concur.