**COMMERCIAL INVESTMENT CORP.,
Plaintiff and Appellant,**

v.

**Don SIGGARD and Glenna F. Siggard Family Trust, and Don Siggard and Glenna F. Siggard as Trustees for the Don Siggard and Glenna F. Siggard Family Trust, Defendants and Appellees.**

No. 960028-CA.

Court of Appeals of Utah.

April 10, 1997.

---

James L. Christensen and Mark J. Morrise, Salt Lake City, for Appellant.

Randall N. Skanchy and Scott D. Cheney, Salt Lake City, for Appellees.

Before DAVIS, WILKINS and ORME, JJ.

## OPINION

DAVIS, Presiding Judge:

Plaintiff appeals the jury verdict in favor of defendants and the trial court's denial of its motion for a new trial. We affirm.

## I. FACTS

"Defendant is appealing from a jury verdict; thus we recite the facts in a light most favorable to the jury's verdict, 'but present conflicting evidence to the extent necessary to clarify the issues raised on appeal.'" *State v. Vigil,* 922 P.2d 15, 18 (Utah.Ct.App. 1996) (quoting *State v. Winward,* 909 P.2d 909, 910 (Utah.Ct.App.1995)).

On August 31, 1988, plaintiff Commercial Investment Corporation (Buyer) entered into a real estate contract (contract) with defendants (Sellers) wherein Buyer agreed to purchase and Sellers agreed to sell approximately twenty acres [1] of a thirty-eight acre parcel of undeveloped land. The contract provided for annual interest payments on the third day of March every year beginning in 1989 and ending in 1998, at which time the entire unpaid principal balance was due. In the event Buyer defaulted on any of the contract terms, Sellers had the following option:

A. Sellers shall give Buyer written notice specifically stating: (1) the Buyer's default(s); (2) that Buyer shall have thirty (30) days from its receipt of such written notice within which to cure the default(s), ... and (3) Sellers' intent to elect this remedy if Buyer does not cure the default(s) within thirty (30) days. Should Buyer fail to cure such default(s) within the thirty (30) days, then Sellers shall give to Buyer another written notice informing Buyer of his failure to cure the default(s) and of Sellers' election of this remedy. Immediately upon Buyer's receipt of this second written notice, Sellers shall be released from all obligations at law and equity to convey the Property to Buyer, and Buyer shall become at once a tenant-at-will of Sellers. All payments which have been made by Buyer prior thereto under this Contract shall, subject to then existing law and equity, be retained by Sellers as liquidated and agreed damages for breach of this Contract.... [2]

Buyer failed to make the second interest payment of $56,000 on March 3, 1990.[3] Therefore, on March 5, 1990, Sellers sent Buyer a notice of default which provided, "To comply with section Eighteen–A with [sic] the contract between [Sellers] to [sic] [Buyer] dated August 31, 1989, we submit this notice of buyers default in annual option payment of Fifty[-]Six Thousand Dollars ($56,000.00) as of March 3, 1990. Buyer has thirty days from receipt of this notice to cure the default." Buyer received the notice of default on March 6, 1990.[4]

On April 2, 1990, Sellers sent Buyer a notice of forfeiture dated April 3, 1990. The notice stated, in relevant part, "Since[ ] the default notified in the first letter mailed March 5, 1990 was not cured, receipt of this letter releases seller of all obligations to original contract with [Buyer] dated August 31, 1988." Buyer received this letter on

---

1. The total amount of acreage agreed upon was reduced to sixteen acres on a later date for reasons not relevant to this appeal.

2. The contract also provided Sellers with a foreclosure remedy upon Buyer's default. However, this provision is not relevant to this appeal.

3. Buyer does not "dispute the jury's findings that Buyer was not excused from making the $56,000 annual interest payment" or "that Buyer breached the contract."

4. This fact was stipulated to by the parties in the Pretrial Order.

April 3, 1990, two days before the thirty-day cure period was to expire.[5]

On April 4, 1990, Buyer filed a Notice of Interest against the entire thirty-eight acre parcel. Two years later Buyer filed a lawsuit against Sellers seeking specific performance. Sellers counterclaimed, seeking damages for Buyer's breach of contract and damages for wrongful lien premised on Buyer's Notice of Interest against the entire thirty-eight acre parcel instead of the sixteen acres Buyer was purchasing.

The case was tried before a jury on August 1–4, 1995. The jury returned a special verdict, which found:

(i) The contract between [Buyer] and [Sellers] was a valid contract. (This finding was stipulated to by the parties prior to submission to the jury); and

(ii) [Buyer] failed to fully tender its performance and perform all of its contractual obligations according to the terms of the Contract including the timely payments of all amounts due (this finding was stipulated to by the parties prior to submission to the jury); and

(iii) [Buyer] was not excused from tendering its performance and from performing its contractual obligations including its annual interest payment obligations; and

(iv) [Buyer] is not allowed to assert that it was excused from failing to perform its obligations by any one of the following: a) estoppel, b) waiver and/or unclean hands[; and]

(v) [Buyer] is not entitled to specific performance of the Real Estate Contract; and

(vi) [Sellers] performed all steps necessary to forfeit [Buyer's] interest in the contract; and

(vii) The Notice of Interest was filed by [Buyer] in violation of Utah Wrongful Lien Statute; and

(viii) [Buyer] breached the Real Estate Contract. . . .

The jury also found that Sellers had not suffered any damages from Buyer's wrongful lien and thus awarded Sellers no damages. Based on the jury's special verdict, the trial court dismissed Buyer's claim of specific performance with prejudice, granted Sellers' counterclaims for breach of contract and breach of the covenant of good faith and fair dealing, voided the contract, and forfeited Buyer's interest in the property. The trial court also awarded Sellers the statutory penalty of $1000 and attorney fees for their wrongful lien counterclaim.

On August 28, 1995, Buyer filed a Motion for a New Trial pursuant to Rule 59(a)(6) of the Utah Rules of Civil Procedure,[6] arguing the jury erred in determining that "Seller performed all steps necessary to forfeit Buyer's interest in the contract" and that the "Notice of Interest was filed by [Buyer] in violation of the Utah Wrongful Lien Statute." The trial court denied Buyer's motion and the instant appeal was taken therefrom.

## II. ISSUES

Buyer raises two issues on appeal. First, Buyer argues that there was insufficient evidence to support the jury's verdict that Sellers performed all the necessary steps to forfeit Buyer's interest in the property. Second, Buyer maintains there is insufficient evidence supporting the jury's verdict that Buyer filed the Notice of Interest in violation of Utah's Wrongful Lien Statute.

## III. STANDARD OF REVIEW

 "A jury's verdict which is the subject of a motion for a new trial will be reversed only if the evidence supporting it was completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Deats v. Commercial Sec. Bank,* 746 P.2d 1191, 1192

---

5. Sellers testified that the forfeiture notice was sent prematurely because of Sellers' incorrect belief that the thirty-day cure period began to run from March 3, the day the interest payment was due. However, Sellers concede that the correct day to start counting is the day Buyer received the notice of default.

6. Rule 59(a)(6) of the Utah Rules of Civil Procedure provides, in pertinent part, "[A] new trial may be granted ... for any of the following causes ...: (6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against [the] law."

(Utah.Ct.App.1987); *accord Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). On appeal, "[w]e review the jury's verdict in the light most favorable to the prevailing party, and accord the evidence presented and every reasonable inference fairly drawn from the evidence the same degree of deference." *Deats*, 746 P.2d at 1192. The moving party has the burden of "'marshal[ing] all the evidence supporting the verdict' and then show[ing] that the evidence cannot support the verdict." *Hansen*, 761 P.2d at 17–18 (citation omitted).

## IV. ANALYSIS

### A. Forfeiture Notice

■ The jury found that Sellers performed all the necessary steps to forfeit Buyer's interest in the contract. Buyer, however, argues that because the notice of forfeiture was undisputably two days premature, Sellers did not strictly comply with the notice provisions contained in the contract; therefore, the forfeiture was invalid as a matter of law. Sellers maintain that because Buyer clearly understood its rights and knew it had thirty days to cure the default but failed to do so, the premature notice was just a technicality that can be ignored.

We begin with the well-established principles that although "parties are free to contractually provide for ... an enforceable forfeiture provision," *Adair v. Bracken*, 745 P.2d 849, 852 (Utah.Ct.App.1987), "forfeitures are not favored in the law," *Russell v. Park City Utah Corp.*, 29 Utah 2d 184, 186–87, 506 P.2d 1274, 1276 (1973). *See also Madsen v. Anderson*, 667 P.2d 44, 47 (Utah 1983) ("The undesirability of [forfeiture] is well-stated by the legal maxim that 'the law abhors forfeiture.'" (citation omitted)). Thus, "in order to forfeit a purchaser's interest under a uniform real estate contract, the seller *must comply strictly* with the notice provisions of the contract." *Grow v. Marwick Dev., Inc.*, 621 P.2d 1249, 1251 (Utah 1980) (emphasis added); *accord Adair*, 745 P.2d at 852; *Russell*, 506 P.2d at 1276. Furthermore,

[t]he [forfeiture] provisions in the uniform real estate contract are not self-executing, and to enforce them, it requires some affirmative act on the part of the seller to notify the buyer of what specific provision in the contract the seller is proceeding under and state what the buyer must do to bring the contract current.

*Id.* at 1251–52; *accord Adair*, 745 P.2d at 852.

In the case at bar, paragraph eighteen of the contract provides that if Buyer defaulted on the contract, which Buyer readily concedes it did, then Sellers could forfeit Buyer's interest in the property if Sellers gave Buyer "written notice *specifically* stating: (1) the Buyer's default(s); (2) that Buyer *shall have thirty (30) days from its receipt of such written notice* within which to cure the default(s), ... and (3) Sellers' intent to elect this remedy if the Buyer does not cure the default(s) within thirty (30) days." (Emphasis added.) If Buyer failed to cure its default within the thirty-day period, the contract provided that "Sellers *shall* give to Buyer another written notice informing Buyer of his failure to cure the default(s) and of Sellers' election of this remedy." (Emphasis added.) Therefore, in order to strictly comply with the notice provisions of the contract, Sellers were required to give Buyer thirty days from Buyer's receipt of the notice of default in which to cure its default, and only after both the expiration of the cure period and Buyer's failure to perform had occurred could Seller then send a second forfeiture notice apprising Buyer that its rights in the property were terminated based on its nonperformance.

On March 5, 1990, Sellers sent Buyer a notice of default,[7] which was received by Buyer on March 6, 1990. Accordingly, Buyer had until April 5, 1990 to cure its default. Admittedly, Sellers sent the notice of forfeiture to Buyer on April 2, 1990, which Buyer received on April 3, 1990. Thus, Sellers' notice of forfeiture was two days premature, a fact that Sellers concede. According to the

---

7. Neither party argues that the notice of default was deficient in any way. However, the default notice did not give Buyer notice of Sellers' election of remedies, a requirement of the contract terms.

clear language in the contract, lapse of the thirty-day cure period was an essential precondition to sending the forfeiture notice. Therefore, Sellers' premature notice of forfeiture was insufficient as a matter of law to terminate Buyer's rights in the property because Sellers did not strictly comply with the notice provisions of the contract.

■ Sellers also maintain that because Buyer never attempted to cure its default within the last two days, Sellers' "technical violation" did not harm Buyer. Notwithstanding Sellers' argument, this court has stated,

> A notice of forfeiture is a declaration that the seller is no longer just threatening to invoke his contractual remedy, but has *in fact* elected the forfeiture option ... and has thereby terminated the buyers' contractual interests.... By definition, it does not give buyers the option of performance, ... as a notice of default must. A notice of forfeiture leaves no room for speculation about the extinguishment of the buyers' rights in the contract.

*Adair*, 745 P.2d at 853. Thus, "a forfeiture under a uniform real estate contract completely forecloses the buyer's rights in the property." *Madsen*, 667 P.2d at 47. Buyer's knowledge of its default and its failure to tender performance in those last two remaining days does not validate Sellers' otherwise defective forfeiture. If we upheld the validity of Sellers' premature forfeiture notice, then Buyer would be unable to cure its default because its right to do so had been extinguished.[8] *See Adair*, 745 P.2d at 853. Accordingly, we reject Sellers' contention that Buyer's nonperformance in those last two days somehow legitimatized the premature notice.

■ Notwithstanding our conclusion that Sellers' forfeiture notice was insufficient as a matter of law to invalidate Buyer's interest in the property under the contract, Buyer is not entitled to the relief it seeks from this court. On appeal, Buyer specifically accepted that portion of the jury's verdict that found that Buyer was not entitled to specific performance. Notwithstanding this verdict, Buyer

now asks this court to hold that Buyer is entitled to a minimum of two days in the thirty-day cure period in which to cure its default. However, Buyer is, in effect, seeking specific performance to which it concededly is not entitled. *See Thayne v. Beneficial Utah, Inc.*, 874 P.2d 120, 123 (Utah 1994) (stating appellant lost opportunity to challenge trial court's entry of default judgment because appellant failed to appeal that issue); *see also* Utah R.App. P. 3(a). Buyer cannot merely recharacterize the relief sought so as to circumvent the jury's verdict and the trial court's subsequent entry of judgment. To do so would allow an impermissible collateral attack on a verdict entered against it that it did not correctly appeal. Because we cannot give Buyer the relief sought, and because " 'any portion of a judgment not appealed from continues in effect, regardless of the reversal of other parts of the judgment,' " *D'Aston v. Aston*, 844 P.2d 345, 352 (Utah.Ct.App.1992) (citation omitted), the jury's verdict regarding specific performance and the trial court's denial of Buyer's motion for a new trial is affirmed.

### B. Wrongful Lien

■ Buyer also challenges the jury's special verdict concluding that Buyer violated Utah Code Ann. § 38–9–1 (1994). Section 38–9–1 provides, in relevant part:

> A person who claims an interest in, or a lien or encumbrance against, real property, who causes or has caused a document asserting that claim to be recorded or filed in the office of the county recorder, who knows or has reason to know that the document is ... groundless, ... is liable to the owner or title-holder for $1,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees, and costs as provided in this chapter, if he willfully refuses to release or correct such document of record within 20 days from the date of written request from the owner or beneficial title-holder of the real property....

*Id.*

Although Buyer was entitled to purchase only sixteen acres of Sellers' thirty-eight acre

---

**8.** Indeed, even Sellers point out in their brief that "further obligations between the parties under

the contract were terminated" by the forfeiture notice.

plot, Buyer nonetheless filed a Notice of Interest against the entire thirty-eight acres. Sellers argued at trial that Buyer's Notice of Interest was groundless and therefore in violation of section 38–9–1. The jury agreed. Buyer, however, argues that the evidence was insufficient to support the jury's verdict.

■ We must first define the term "groundless" so we may apply section 38–9–1. "[A] statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute." *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n,* 814 P.2d 581, 590 (Utah 1991). A claim of interest in real property is groundless if it "has no arguable basis or is not supported by any credible evidence." *Evergreen West, Inc. v. Boyd,* 167 Ariz. 614, 810 P.2d 612, 619 (App. 1991). Thus, Buyer's Notice of Interest will be considered "groundless" for the purposes of section 38–9–1 if Buyer did not have an arguable basis for filing the Notice or if Buyer's reasons for filing the Notice were not supported by any credible evidence.

■ In determining the correctness of the jury's verdict, we are mindful that the "[r]esolution of a factual dispute is a matter for the jury as trier of fact, unless evidence on the issue 'so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case.'" *Western Fiberglass, Inc. v. Kirton, McConkie & Bushnell,* 789 P.2d 34, 35 (Utah. Ct.App.1990) (quoting *Cambelt Int'l Corp. v. Dalton,* 745 P.2d 1239, 1242 (Utah 1987) (citation omitted)). Furthermore, it is entirely within the jury's province to judge the credibility of the witnesses and weigh the evidence. *See Steele v. Breinholt,* 747 P.2d 433, 436 (Utah.Ct.App.1987).

Observing the above-stated principles and the standard of review applicable to the case before us, we hold that there was sufficient evidence supporting the jury's verdict that

by filing the Notice of Interest, Buyer violated section 38–9–1. Buyer was entitled to purchase only sixteen acres of Sellers' thirty-eight acre plot. Buyer intended to develop that part of the parcel closest to the intersection. Buyer had in its possession legal descriptions for eighteen acres, sixteen acres, and thirteen acres. Buyer had refused to release the Notice of Interest after requested to do so by Sellers.

Buyer justified its conduct by claiming that it had not designated the property it wished to purchase because Sellers had refused to provide Buyer a perimeter boundary survey. According to Buyer, because it could not specify the particular acreage it desired to purchase, Buyer necessarily had to file a Notice of Interest against the whole thirty-eight acre parcel. However, the jury also heard testimony that, after Buyer initiated the suit against Sellers, Sellers provided Buyer the requested survey, but Buyer refused to designate the sixteen acres and release the Notice of Interest against the other twenty-two.

We conclude that the above evidence is not "so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Deats,* 746 P.2d at 1192. The evidence supports an inference that Buyer could have limited its Notice of Interest to only those acres it was interested in developing. The jury apparently discounted Buyer's reasons for filing the Notice of Interest against the whole thirty-eight acres and, accordingly, found that the Notice of Interest was groundless. We therefore hold that the jury's verdict that Buyer violated section 38–9–1 was supported by sufficient evidence and affirm the same.[9]

## V. CONCLUSION

We hold that Sellers' forfeiture notice was insufficient as a matter of law and, therefore, of no force and effect. However, because Buyer did not appeal the jury's verdict that Buyer was not entitled to specific perfor-

---

9. After reviewing the jury instructions, it is evident that the jury was unaware of the effect of finding the Notice of Interest groundless and thus in violation of section 38–9–1. *Cf. Dixon v.*

*Stewart,* 658 P.2d 591, 596 (Utah 1982). However, because neither party requested that the jury be so instructed, nor have they raised the issue on appeal, we do not reach the same.

mance, we decline to grant Buyer the relief sought. We affirm the jury's verdict determining that Buyer violated section 38–9–1 by filing a Notice of Interest against the whole thirty-eight acre plot.

WILKINS, Associate Presiding Judge, concurs.

ORME, Judge (concurring in the result):

I believe all the attention given to the forfeiture provision in the contract and to the timing of the two notices, both here and at trial, largely misses the point. Even if we completely ignore the two notices that were sent, which is what we ought to do if they were ineffective to terminate Buyer's interest nonjudicially, we have this situation: Buyer made only one payment under the contract. Buyer materially breached the contract by wholly failing, without excuse, to make the second payment due, in the amount of $56,-000. Buyer followed this breach by failing to make the third annual payment and the fourth annual payment, also without excuse and in material breach of its obligations under the contract. Without paying the substantial arrearage into court or even tendering the amount due, Buyer eventually sued for specific performance. Being in material breach of its obligations under the contract, without excuse and without having tendered its performance, Buyer was simply not entitled to specific performance of the contract. In turn, Sellers were entitled to have their title quieted against Buyer, which had lost its rights under the contract by its long-standing material breach and its failure to tender its performance.

Given the concessions made, the evidence adduced, and the jury's special verdicts (aside from the unfounded one regarding Sellers' efforts at effecting nonjudicial forfeiture), the foregoing is the basis on which I believe the judgment herein should be affirmed.